459 So.2d 851 (1984)
AMERICAN CYANAMID COMPANY
v.
UNITED STATES FIDELITY & GUARANTY CO., et al.
83-336, 83-380.
Supreme Court of Alabama.
September 21, 1984.
Rehearing Denied November 9, 1984.
William J. Sullivan, Jr. of Sadler, Sullivan, Sharp & Stutts, Birmingham, for appellant.
Steven F. Casey of Balch, Bingham, Baker, Ward, Smith, Bowman & Thagard, Birmingham, for appellee Alabama Power Co.
*852 W.J. McDaniel and Connie Ray Stockham, Birmingham, for appellees John A. Teague and Teague Ins. Agency.
L. Graves Stiff III, of Starnes & Atchison, Birmingham, for appellee U.S. Fidelity and Guar. Co.
JONES, Justice.
These appeals, following A.R.Civ.P. 54(b) orders, by Plaintiff/Appellant American Cyanamid Company (ACCO), stem from the trial court's grant of summary judgment motions in favor of Defendants/Appellees USF & G, Alabama Power Company, (APCo) John A. Teague, and Teague Insurance Company. We affirm as to John A. Teague, individually, and reverse and remand as to each of the corporate Defendants.

FACTS
ACCO's plant is adjacent to the Kimberly-Clark (K-C) plant near Childersburg, Alabama. ACCO manufactures a product used by K-C in the manufacture of paper. ACCO engaged William C. Sayers, d/b/a Coosa Machine Shop, to clean out the residue or waste product from the ACCO plant, which was pumped through flexible pipes into two ponding areas.
Ronnie Gramling, an employee of Sayers, while operating the dragline during the cleaning procedure, allowed it to come into contact with Alabama Power Company's power lines that extended over ACCO's property and supplied electricity to K-C's plant. When the dragline hit the electric wires, the power was "knocked out" at the K-C plant for eight hours, shutting down its production, and causing the work in progress to solidify or freeze in the machinery. Damage to K-C amounted to $155,556.00. No other property was damaged, and no one was injured.
An agreement between ACCO and K-C contains the following provision:
"9. Indemnification: Cyanamid agrees to protect, reimburse and hold harmless Kimberly-Clark for any loss or damage which Kimberly-Clark may incur as a result, in whole or in part, of the act of Cyanamid, its employees or agents, under the terms of this agreement. Cyanamid shall, and hereby agrees to, indemnify and save Kimberly-Clark harmless from and against liability or liabilities which may be claimed or asserted against Kimberly-Clark by reason of any damage or injury to any person or persons whomsoever or to any property or properties whatsoever, caused by, arising out of, or in any way connected with the services and supply furnished and to be furnished by Kimberly-Clark hereunder, including the transmission thereof or relating to further provision of maintenance of any incidental line, poles, pipes, or any equipment and appliance provided, however, that Cyanamid's said indemnification shall not extend to any liability that may be caused by or arise out of the negligence of Kimberly-Clark, its employees, agents, invitees or representatives."
Additionally, ACCO required Sayers to insure himself and his company against the possibility of an accident causing personal injury and/or property damage. Insurance was procured with USF & G through the Teague Insurance Company, USF & G's local agent. According to testimony by ACCO's officers, ACCO had an oral agreement with Teague which provided that ACCO would be notified if Sayers's insurance was cancelled. The insurance was cancelled several months before the accident, but ACCO was not notified.
Pursuant to their indemnification agreement, ACCO paid K-C $155,556.00, and then sued Alabama Power Company, Sayers, and Gramling as joint tortfeasors, claiming as damages the monies paid by it to K-C. Additionally, ACCO claims breach of contract and negligence against USF & G, John Teague, and Teague Insurance Company for failure to notify ACCO of the cancellation of Sayers's insurance policy.

ISSUES
The broad issue involved in these appeals is whether a genuine issue of material fact *853 existed as to any of the Defendants such that the trial judge erred in granting summary judgment in favor of each of the Defendants. Essential to the determination of that issue are the following specific issues:
As to APCo: 1) Whether ACCO's claimed status as a subrogee to the rights of K-C is valid, thus permitting ACCO to maintain an action against APCo for its alleged negligent damage to K-C; and, if so, 2) whether, under the facts shown in support of APCo's summary judgment motion, ACCO's claim is precluded, as a matter of law, because of the dangerous or hazardous activity of its independent contractor's operation of the dragline.
As to USF & G, Teague, and Teague Insurance Co.: Whether the alleged promise to notify ACCO of the cancellation of the insurance policy is unenforceable, as a matter of law, for lack of consideration.

DECISION:

As to APCo: 1) Subrogation

Although the trial court's order does not state the grounds for its dismissal of APCo, APCo argues that ACCO was not liable to K-C under paragraph 9, the indemnification provision of the agreement between ACCO and K-C, thus preventing ACCO from pursuing APCo under a theory of subrogation. According to that agreement, ACCO is liable to K-C "for any loss or damage which [K-C] may incur as a result ... of the act of [ACCO], its employees or agents." Admittedly, Sayers was an independent contractor, and Gramling was his employee. APCo contends that this distinction is dispositive of the subrogation issue, and thus dispositive of the issue of its liability to ACCO.
We disagree. While, according to the letter of the indemnification agreement, it is arguable that ACCO is to hold K-C harmless for loss or damage caused by ACCO's employees or agents, the spirit of the agreement is not so limited. Rather, the intent of the agreement is not to limit loss or damage to that caused solely by ACCO's agents or employees, but to include loss or damage incurred by K-C as a result of the act of ACCO in the performance of its contractual obligations to K-C.
Indeed, it is unreasonable to speculate that ACCO could have successfully defended a claim for indemnity by K-C for the loss here in question on the ground that Sayers was an independent contractor and not its employee. Particularly is this true where, as here, ACCO's liability, pursuant to the terms of indemnity, is not predicated upon ACCO's culpable conduct. For purposes of K-C's enforcement of the indemnity agreement, "any loss or damage which [K-C] may incur as a result ... of the act of [ACCO]" is the same, in legal terms, whether the power outage was caused by ACCO's employee, while cleaning out ACCO's ponds, or by an independent contractor engaged by ACCO for that purpose. Whatever legal significance may attach to the employee/independent contractor distinction in other contexts, in the instant context it is a distinction without a difference.
Furthermore, beyond the narrow language of the indemnity agreement, ACCO rests its theory of subrogation on the principles enunciated in American Southern Insurance Co. v. Dime Taxi Service, Inc., 275 Ala. 51, 151 So.2d 783 (1963). Dime Taxi involved the liability of a taxi company for damages sustained by a passenger in an accident caused by the negligence of the taxi company's driver. The taxi company was liable because of the negligence of its driver, and the Court allowed the employer to be subrogated to the rights of the injured party against the driver, its own employee, and the driver's insurer. 275 Ala. at 56, 151 So.2d at 786.
While Dime Taxi's theory of subrogation is limited, of course, to the factual context of that casea master/servant relationwe cannot so limit the rule's application. The Dime Taxi principle of subrogation is equally applicable here. When one, under a claim of right, discharges an obligation for which another should be held legally liable for payment, then the former *854 stands in the shoes of the obligor and may seek reimbursement against the latter for the damages caused by its allegedly culpable conduct.
At any rate, K-C did, in fact, assert its claim (albeit informally) against ACCO, pursuant to the indemnity agreement; and ACCO, consistent with K-C's interpretation of that agreement, paid the claim. Therefore, APCo is without standing to contest ACCO's status as subrogee on the ground that ACCO was not obligated to pay K-C's loss under the terms of the indemnity agreement. Because of ACCO's payment to K-C under the indemnity agreement, we hold that ACCO is entitled to stand in the shoes of K-C against APCo. This is not to say, of course, that ACCO, by its payment, enhanced its position over that held by K-C in the pursuit of its claims against either of the alleged joint tortfeasors. In its claims against each of the Defendants, ACCO's plaintiff status is no better or no worse than that of the party in whose shoes it now stands.

2) APCo's Liability

We are confident that the trial court grounded its summary judgment order on the subrogation issue and did not reach the issue of ACCO's allegation of negligence or APCo's primary defense of the dangerousness vel non of the crane operation. In any event, it is clear that a genuine issue of material fact is presented for determination by the jury; thus, disposition by summary judgment is inappropriate.

AS TO USF & G, TEAGUE, AND TEAGUE INSURANCE COMPANY
In support of its respective motions for summary judgment, the insurance group of Defendants submitted a brief stipulation of facts and argued that any oral agreement to notify ACCO, in the event of the cancellation of Sayers's liability insurance policy, was invalid for lack of consideration, citing, as authority, United States Pipe and Foundry Co. v. United States Fidelity and Guar. Co., 505 F.2d 88 (5th Cir.1974). If United States Pipe is interpreted as saying, in all events where the insurance company agrees to notify one who is not the insured or the named loss payee and who did not pay the premium, that the requisite element of consideration is lacking, as a matter of law, then we reject that interpretation as an incorrect statement of Alabama law.
While we do not so construe United States Pipe's holding, the appellee insurance group urged this interpretation below and on appeal; and, unquestionably, the trial court's summary judgment order impliedly reflects this narrow construction. Be that as it may, under the totality of the circumstances in the instant case, we hold that a fact question is presented as to the presence or absence of the required element of consideration.
If the jury is reasonably satisfied from the evidence that the promise of Teague Insurance to notify ACCO of any cancellation of Sayers's coverage was a mere gratuity or courtesy, unrelated to ACCO's efforts in placing the coverage with the Teague agency, then the jury would not be authorized to find a binding agreement to notify. If, on the other hand, the jury is reasonably satisfied that ACCO's president, or other corporate officer, accompanied Sayers to the Teague agency in furtherance of Sayers's contractual obligation to acquire insurance and that ACCO was instrumental in placing this coverage with the Teague agency on the condition that ACCO's interest be protected through notification by the Teague agency of any cancellation of the coverage, then the jury would be authorized to find the requisite element of consideration for the agreement; and for the failure to notify ACCO of the policy's cancellation, the Teague agency and USF & G could be held liable.
We find no basis for liability against Teague individually; thus, we affirm the order of dismissal as to him. We reverse the judgment as to each corporate defendant and remand this cause for further proceedings not inconsistent with this opinion.
*855 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and FAULKNER, SHORES and BEATTY, JJ., concur.
MADDOX, ALMON, EMBRY and ADAMS, JJ., dissent.
EMBRY, Justice (dissenting):
There are several fallacies in the majority opinion. Examples are found in statements such as: "Rather the intent of the agreement is not to limit loss or damage to that caused solely by ACCO's agents or employees, but to include loss or damage incurred by K-C as a result of the act of ACCO in the performance of its contractual obligations to K-C."
Neither the indemnification agreement nor the evidence in this case permits me to reach such a conclusion.
Nor can I conclude that: "Whatever legal significance may attach to the employee/independent contractor distinction in other contexts, in the instant context it is a distinction without a difference."
In this case, the Dime Taxi principle of subrogation is in nowise applicable. Furthermore, ACCO, rather than discharging an obligation under a claim of right, under the evidence, voluntarily paid the debt of another without any duty to do so. In these circumstances, ACCO is not subrogated to any rights of Kimberly-Clark. Barnes v. Powell, 241 Ala. 409, 3 So.2d 80 (1941). Testimony of the person who made the decision that American Cyanamid would pay Kimberly-Clark was that he did not understand the difference between an agent or servant and an independent contractor in a legal sense.
The operation of the crane in this case was not an inherently dangerous activity under the law. Evans v. Kendred, 362 So.2d 206 (Ala.1978). Factually, the evidence will not support the conclusion that it was, in this case, anything other than.

"Ordinary building operations or activities, including both construction and demolition, [which] are generally not considered work of an inherently or intrinsically dangerous character rendering the employer-owner liable for injuries resulting from the negligence of an independent contractor in doing the work...." (Emphasis added.)
41 Am.Jur.2d Independent Contractors § 43 (1968). For many reasons, including those stated herein, the judgments below are due to be affirmed.
MADDOX, ALMON and ADAMS, JJ., concur.