441 F.2d 329
 STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellant,
v.
James H. COLEMAN, Joanne W. Livingston and James F.
Livingston, Defendants-Appellees.
James H. COLEMAN, Third-Party Plaintiff-Appellee,
v.
ALLSTATE INSURANCE COMPANY, Thire-Party Defendant-Appellee.
 No. 29660.
 United States Court of Appeals, Fifth Circuit.
 April 13, 1971.
 
 Cubbedge Snow, Cubbedge Snow, Jr., Martin, Snow, Grnat & Napier, Macon, Ga., for appellants.
 H. Jerome Strickland, Macon, Ga., for Allstate Ins. Co.
 Duross Fitzpatrick, Cochran, Ga., for Joanne W. Livingston and James F. Livingston.
 Andrew W. McKenna, Mitchel P. House, Jr., Melton, McKenna & House, Macon, Ga., for appellees, James H. Coleman and Mrs. James H. Coleman.
 Before THORNBERRY, GODBOLD and MORGAN, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 In a declaratory judgment suit to determine liability coverage on an automobile policy the jury found in favor of the insureds, the Livingstons, after the court refused the motion of the insurer for a directed verdict. The court subsequently denied motions for judgment n/o/v and for a new trial. The insurer, State Farm, appealed, and we reverse. The insurer's motion for directed verdict should have been granted, because as a matter of law Mrs. Livingston breached the policy condition requiring notice 'of an accident, occurrence or loss * * * as soon as practicable,' by failing for a year to report the alleged accident or occurrence asserted as the basis of liability.
 
 The policy provides:
 
 2
 Notice of Accident, Occurrence or Loss.
 
 
 3
 In the event of an accident, occurrence or loss, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured, and also reasonably obtainable information respecting the time, place, circumstances of the accident or occurrence, names and addresses of injured persons and available witnesses.
 
 
 4
 Mrs. Livingston and the injured person, Coleman, worked at Robins Air Force Base, in Georgia. Coleman rode to and from work with Mrs. Todd. On October 19, 1967 the Livingston and Todd cars were parked in adjacent angle parking places. At the time Coleman was about to enter the rear door of the Todd car, on the side next to the Livingston car, Mrs. Livingston was backing out. She testified that she heard Coleman call out once or twice 'whoa.' Coleman testified that the Livingston car squeezed and twisted him against the Todd car, but at the time he was not aware that he was injured. Mrs. Livingston testified that she felt no impact and was not aware of anything unusual. There was no discussion of the matter at the scene between the several persons who rode to and from work in the two cars.
 
 
 5
 The next day the following events occurred. Mrs. Todd, who testified that she was acting on information obtained from Coleman's wife, called Mrs. Livingston by telephone and stated that Mrs. Livingston had hit (or that Mrs. Livingston had hit and hurt) one of her passengers the day before. Mrs. Livingston insisted she had not, Mrs. Todd insisted Mrs. Livingston had, and the conversation became unfriendly. On the advice of her superior at her place of employment, Mrs. Livingston called the base police and related the conversation with Mrs. Todd. The police told her if there was no accident there was nothing to report. Mrs. Livingston also called and related to her passenger, Mrs. Davis, the conversation with Mrs. Todd. In addition, a base investigating officer talked with Mrs. Davis about the occurrence. On the way home that evening, Mrs. Livingston and Mrs. Todd discussed their conversation with each other and the investigating officer's conversation with Mrs. Davis.
 
 
 6
 Approximately one week later the base police talked again with Mrs. Livingston and told her that Coleman claimed that he had been injured by her vehicle, that he had brought a doctor's certificate stating he was injured, and that he had lost three days from work as a result of the injury. About two months later a base police official again visited Mrs. Livingston relating to Coleman's claim that she had backed into him. About six months later the Workmen's Compensation Office of the base called Mrs. Livingston three times, unsuccessfully seeking from her a written statement concerning Coleman's claim about the alleged accident.
 
 
 7
 Throughout the occurrence of all these events Mrs. Livingston gave no notice to State Farm. On October 16, 1968 she received a notice from attorneys for Coleman stating he had been seriously injured from having been struck by her car and suggesting she notify her insurer. She gave notice to State Farm either on that date or on October 24.
 
 
 8
 The parties agree that the notice provision of the policy required Mrs. Livingston to give notice within a reasonable time after she knew, or through the exercise of reasonable diligence should have known, of the occurrence of an accident. See, e.g., Standard Accident Ins. Co. v. Alexander, 103 F.2d 500 (5th Cir. 1939). What is a 'reasonable time' depends upon the facts and circumstances of the case, measured by an objective standard from the viewpoint of the ordinary policyholder. Phoenix Indemnity Co. v. Anderson's Groves, 176 F.2d 246 (5th Cir. 1949); Young v. Travelers Ins. Co., 119 F.2d 877, 880 (5th Cir. 1941); Maryland Cas. Co. v. Sammons,99 F.2d 323 (5th Cir. 1938); 8 Blashfield, Automobile Law & Practice, 342.3.
 
 
 9
 If the insured does not know that an accident has occurred, he has no duty to report it. Standard Accident, supra, 103 F.2d at 501. If he knows that there has been an occurrence, an impact, but it is so trivial in nature that the ordinary prudent person acting reasonably would consider it as so inconsequential as not to afford the basis for a claim or give rise to a claim, there is no duty to report. Phoenix Indemnity, supra, 176 F.2d at 247.
 
 
 10
 Examining the facts in the light of these principles, we see that one day after the accident Mrs. Livingston knew these things: Coleman was in the immediate proximity of her car as she backed. He called out to her a warning or signal. Accepting that Mrs. Livingston was unaware of an impact, Coleman claimed he had been struck by her car. With this knowledge, Mrs. Livingston considered the assertion by Mrs. Todd of Coleman's claim to be of sufficient import to report it to the base police, who thought it of sufficient import to make some investigation that day on their own, a fact known to Mrs. Livingston (through Mrs. Davis) before the day was over.
 
 
 11
 It is not clear whether Mrs. Livingston was told by Mrs. Todd that Coleman was only struck or that he was struck and hurt. In her testimony, Mrs. Livingston confined it to the former. A base police report quoted Mrs. Livingston as reporting to its investigator that she learned from Mrs. Todd the day after the accident that Coleman was claiming to be injured. The difference is not material, since all agree that approximately a week after the accident Mrs. Livingston was informed Coleman was claiming to be injured.
 
 
 12
 Mrs. Livingston inappropriately rests on her subjective conclusion that there had been no accident, when from Mrs. Todd, the base police, and the Workmen's Compensation Office, she was told several times, over a period of months, that there had been an accident. Her difficulty was that rather than acting on information she repelled such information and stood on her subjective view that nothing had occurred and that if Coleman was hurt, he suffered his injuries at some other time and place.[1] An insured is not relieved of breach of the notice provision by his own determination that there is no liability. Nan Travis Mem. Hosp. v. St. Paul Fire & Mar. Ins. Co., 394 F.2d 112 (5th Cir. 1968).
 
 
 13
 The justification that the claims of injury did not come from Coleman but from others is without merit-- what is significant is not the source of information but whether it is sufficient to a reasonable person to trigger a duty to act.
 
 
 14
 Nor does the claim of triviality withstand examination. It has some force at the time of the incident, but the appearance of triviality was dissipated by notice within a week that Coleman was injured and off from work with a doctor's certificate.[2]
 
 
 15
 Whether notice was promptly given is ordinarily jury issue. Maryland Casualty Co. v. Sammons, supra. But, in this instance the undisputed facts preclude a finding that Mrs. Livingston complied with the notice provision. See Greyhound Corp. v. Excess Ins. Co., 233 F.2d 630 (5th Cir. 1956).
 
 
 16
 State Farm considerably confused the case by its position on the necessity of proof of prejudice resulting from delayed notice. It alleged that it had been prejudiced by the delay in notice, though Georgia law does not require a showing of prejudice. Wolverine Ins. Co. v. Sorrough, 122 Ga.App. 556, 177 S.E.2d 819 (1970); Ballew v. State Farm Mut. Auto. Ins. Co., 122 Ga.App. 417, 177 S.E.2d 172 (1970). During trial it objected to testimony on the ground that prejudice was immaterial. Then, in its motion for directed verdict, State Farm insisted that proof of prejudice was unnecessary and that it was entitled to judgment merely because as a matter of law the delay in notice was unreasonably too long. Alternatively, in its directed verdict motion, State Farm contended that prejudice, if it needed to be shown, could be presumed by the delay. After the court charged the jury on the necessity of a showing of prejudice, State Farm, in its objections to the charge, reiterated its alternative contentions made in the motion for directed verdict. An argument can be constructed that the jury may have based its finding for the insured on the conclusion that State Farm had not been prejudiced, and that, although the prejudice issue was not properly submitted to the jury, State Farm induced its submission and is therefore bound by it. We need not reach this argument, because we have concluded that State Farm was entitled to the grant of its motion for directed verdict on the ground that the delay in giving notice was unreasonable as a matter of law.
 
 
 17
 Reversed.
 
 
 
 [1]
 See Phoenix Ass'n Co. of New York v. Harry Harless Co., 414 F.2d 794, 795 (5th Cir. 1969):
 'The evidence reflects that Harless knew several days after the fire that fire extinguishers serviced by his company were involved and might have failed. From this knowledge Harless knew or should have known that claims might be made against his company.'
 
 
 [2]
 In Maryland Casualty Co. v. Sammons, 99 F.2d 323 (5th Cir. 1938), relied on by Mrs. Coleman, for two months no one considered that the victim, a passenger in the car of his roommate, the insured, had been injured. Then a specialist found he had been hurt, and the insured gave the company notice at once