United States Court of Appeals,

Eleventh Circuit.

Nos. 95-9542, 96-8215.

EVANSTON INSURANCE COMPANY, an Illinois Corporation, Plaintiff-Appellant,

v.

STONEWALL SURPLUS LINES INSURANCE COMPANY, an Alabama Corporation; Schneider National Carriers, Inc., a Nevada Corporation; Stonewall Insurance and Truck Insurance Exchange, Defendants-Appellees.

EVANSTON INSURANCE COMPANY, an Illinois Corporation, Plaintiff-Appellee,

v.

STONEWALL SURPLUS LINES INSURANCE COMPANY, an Alabama Corporation; Stonewall Insurance; Truck Insurance Exchange, Defendants-Appellees,

Schneider National Carriers, Inc., a Nevada Corporation, Defendant-Appellant.

May 6, 1997.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:94-CV-101-CAM), Charles A. Moye, Jr., Judge.

Before BIRCH, Circuit Judge, and HILL and FARRIS[*], Senior Circuit Judges.

HILL, Senior Circuit Judge:

A tractor trailer and private automobile collision resulted in one death and one serious and permanent injury. After the claims for these losses were settled, an excess carrier, Evanston Insurance Co., sued the insured, Schneider National Carriers, Inc., the primary carrier, Truck Insurance Exchange, and two other excess carriers, Stonewall Insurance Co. and Stonewall Surplus Lines

[*]Honorable Jerome Farris, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Insurance Co., over coverage. The insured sought but was denied permission to cross-claim against Stonewall Insurance Co.. Cross-motions for summary judgment were filed. The district court granted summary judgment for the insurer-defendants against Evanston Insurance Co., and denied the insured's motion for summary judgment against Evanston Insurance Co. Evanston Insurance Co. appeals the grant of summary judgment against it. The district court entered an order under 28 U.S.C. § 1292(b) granting Schneider National Carriers, Inc. permission to file an interlocutory appeal. The cases were heard together. For the following reasons, we affirm the grant of summary judgment to Truck Insurance Exchange, Stonewall Insurance Co. and Stonewall Surplus Lines Insurance Co., but reverse the district court and direct that summary judgment be granted in favor of Schneider National Carriers, Inc..

## I. BACKGROUND

This case arises out of an accident which took place on a two-lane road in Fulton County, Georgia at approximately 6:00 a.m. on January 24, 1986. A semi-trailer truck, operated by Schneider National Carriers, Inc., (Schneider) a national trucking company based in Green Bay, Wisconsin, was involved in a collision with a vehicle driven by Laverne Zachery in which her two daughters Allyson Zachery (age five) and Kayla Zachery (age four) were passengers.

The driver of the truck, Albert Blow, was attempting to negotiate a lefthand U turn in the middle of the road when the left dolly leg of the trailer got hung up on the pavement. At that

point, the trailer was perpendicular to the road.[1] As Blow was attempting to get the dolly leg free, Laverne Zachery struck the trailer, just in front of the rear wheels, killing her instantly and causing permanent head and eye injury to Allyson Zachery.

On the day of the accident, Schneider gave notice to its insurers, Truck Insurance Exchange (Truck) ($300,000 coverage), Stonewall Surplus Lines Insurance Company (Stonewall Surplus) (excess liability in the amount of $700,000) and Stonewall Insurance Company (Stonewall) ($4 million excess coverage). No notice was given to Schneider's other excess carriers, Evanston Insurance Company (Evanston) ($2.5 million excess), or Weaver/London Market Insurers, National Union Fire Insurance Company and Fireman's Fund (totalling approximately $100 million of further excess liability coverage). There were no written agreements between or among Truck, Stonewall, Evanston and the other excess insurance companies. Marsh, McLennan & Company served as broker for Schneider in securing the insurance policies with Truck, Stonewall and Evanston.

Truck was obligated to provide a defense, including counsel. Schneider advised Truck that it wanted its defense to be handled by attorney Robert Corry of Dennis, Corry, Porter & Thornton (Dennis & Corry) and Truck agreed. R. Clay Porter worked with Robert Corry. Thereafter, Corry and Porter were Schneider's attorneys. They reported directly to Schneider, as well as to Truck. They

_____

[1]Blow was charged with making an illegal U turn and with vehicular homicide. After giving a statement following the accident, Blow disappeared. Both before and during the first trial, Blow was not available to explain what happened that morning, or to testify.

were in regular, direct communication with Schneider. They owed no divided or other allegiance to Stonewall. It is undisputed that they fulfilled their professional obligation to Schneider. Also, pursuant to Schneider's direct employment, an investigation into the accident and the Zachery claims was undertaken by Custard Insurance Adjusters (Custard). Custard reported the results of its investigation to Corry and Porter, Schneider's attorneys, as well as Truck and Stonewall.

Shortly after the accident, Roderick Zachery, husband of Laverne Zachery and father of Allyson Zachery, retained attorney Carl Reynolds to represent him in his claims against Schneider arising out of the accident.

On or about March 25, 1986, Truck set a reserve at its policy limit of $300,000, and, thereafter, although it received information regarding the Zachery litigation, it assumed no role in the assessment of the case.

On October 17, 1986, E.A. Anderson who handled the Zachery claims for Stonewall wrote to Truck requesting, among other things, information regarding Corry and Porter's evaluation of liability, available damages information, and the amount Truck had reserved. On November 13, 1986, Corry reported to Truck his initial evaluation of the case, which put defense chances in the 10-25% range and reported a recent $800,000 verdict in similar case tried in Fulton County. Anderson, as evaluator of the claims for Stonewall, increased the reserve for the Zachery claims by Stonewall Surplus' $700,000 excess, over the $300,000 underlying Truck limit, for a total of $1 million. None of Stonewall

Insurance's $4 million excess was set aside at this point.

In August of 1987, Stonewall engaged the services of attorney J. Robert Persons of Lord, Bissell & Brook to advise Stonewall regarding the Zachery claims and monitor the anticipated Zachery litigation. Persons had previously worked with Anderson of Stonewall on other cases. In addition, Persons had previously handled several matters with Evanston. In fact, Persons' firm is listed as the agent for service of process upon Evanston on Evanston's policy with Schneider. Persons received from Porter a package of materials comprising reports and other investigative materials generated by Custard and by Dennis & Corry regarding the Zachery claims.

On August 20, 1987, Roderick Zachery sued Schneider in Fulton Superior Court for injuries to Allyson Zachery. The suit was removed to the United States District Court for the Northern District of Georgia.

On August 24, 1987, Stonewall requested Truck make available its $300,000 policy limit for use in settlement negotiations, and Truck did so. Stonewall also set a reserve for the Zachery claims on its policy of $1 million over the existing $1 million provided by the Truck and Stonewall Surplus policies, for a total of $2 million reserved.

In September of 1987, Corry valued the Zachery wrongful death claim at $150,000 to $550,000. Persons agreed with this estimate.

In November of 1987, plaintiffs served Schneider with a set of interrogatories in the Zachery personal injury suit. Answers were drafted by Corry and Porter based upon information in their files

and sent to Schneider to be amended or corrected, if necessary, and executed. Truck and Stonewall were listed as insurers, but not Evanston or any higher level insurers. Schneider, for some reason not apparent on the record, did not amend or correct this item, but executed the answers and they were served. From this point on, Corry and Porter were required to assume that Schneider itself would be liable for any judgment over $5,000,000.

On January 3, 1988, Roderick Zachery filed suit for the alleged wrongful death of Laverne Zachery. The suit was filed in Fulton Superior Court, but removed to the same district court as the personal injury suit and consolidated with it. Both suits named Blow, Schneider and Truck as defendants.[2]

On March 23, 1989, Persons reported to Stonewall that he evaluated the death case at $500,000-$600,000, and that Allyson Zachery's personal injury case had a value "in excess of $1,000,000." Corry and Porter concurred.

On April 14, 1989, Corry sent a structured settlement proposal to plaintiffs on behalf of Schneider with the authorization of Truck and Stonewall. The proposal had a present cash value of approximately $1,265,111, and projected total benefits of $7.3 million for Allyson Zachery and $1.1 million for Roderick Zachery on the wrongful death claim. No response nor demand was made by plaintiff's counsel until September 1990, nearly one and a half years later, despite numerous requests from defendants.

---

[2]Truck was a named defendant in these cases pursuant to O.C.G.A. § 46-7-12 which allows injured persons to maintain a direct action against the indemnity insurance carrier for a motor common carrier for claims up to the policy limit of the coverage.

In January of 1990, plaintiffs filed an amendment to their pretrial submission specifying $7 to $11 million as compensatory and $3 million as punitive damages. Stonewall still evaluated the case at between $1 and $2 million.

In March of 1990, plaintiffs furnished defendants a report from their economic expert that indicated an economic value on Laverne Zachery's life in the range of $514,00 to $699,000, and past and future damages to Allyson Zachery in the range of $1.626 to $2.661 million.

In May of 1990, Stonewall was evaluating the pending cases in the area of a total of $2 million. In September, one week prior to the scheduled trial of the combined Zachery claims, plaintiffs made their first settlement demand: $2.25 million for the wrongful death claim, and $6 million for Allyson Zachery's personal injury claims, for a total of $8,250,000. Persons responded for Stonewall that the demand did not "demonstrate a reasonable or realistic interest in settlement" and that it does "not appear intended to suggest a reasonable alternative to trial."

On September 21, 1990, Porter sent a facsimile to Schneider stating, "I presume that all excess insurers have been notified. If not, please notify them." In a subsequent telephone conversation, plaintiffs' attorney requested that Porter double-check on excess coverage. Porter called Stonewall and was told that the coverage "goes up into the $100 million range." Porter asked if the excess carriers had been notified and was told that Marsh, the broker, would have done so. After the call, Stonewall called Marsh to confirm that notice had been given to the

excess carriers.  There is no dispute that Evanston had not yet received notice of the claims.

On September 24, 1990, the first day of trial, Persons requested from Stonewall and was given authority to offer $1.5 million in a structured settlement.  The trial of the Zachery cases began.  The next day, Persons wrote directly to Schneider that "[e]xcess layers above Stonewall Insurance should have notice of this claim already.  If they do not have such notice, they should be advised immediately that the case is proceeding to trial."  The same day, Marsh, on behalf on Schneider, sent written notice of the Zachery claims to Evanston by facsimile.  The notice communicated the $8.25 million demand.  The faxed notice was immediately followed by telephone calls from Marsh to the various excess insurers.

On September 27, 1990, Persons reported to Stonewall that Corry believed both cases might have a combined value in excess of $3 million, although Persons believed the value was closer to $2 million.  Stonewall executives looked to Anderson for evaluation and negotiation.  After reviewing the case, they gave Anderson full authority to use any or all of the $5 million coverage limits, and, simultaneously set the reserve for the litigation at that amount.

Upon submission of the case to the jury, Corry and Porter, the lawyers who had conducted the defense throughout, both evaluated the cases at less than $3.5 million.

After the jury charge, plaintiffs' lawyer indicated to Persons, Corry and Porter his willingness to discuss settlement in the range of a $6 million total settlement.  In response, Persons

increased defendants' offer to $2.5 million, with projected total benefits exceeding $12 million. Later, Reynolds told Persons that he would recommend settling both cases for $5 million.

On the morning of October 2, 1990, the jury returned a verdict totaling $23.2 million, including awards of $10 million in the death case, $8.2 million in their personal injury case and $5 million in punitive damages.

After the verdict, Evanston took the position that it did not owe Schneider coverage for the Zachery claims and suits because Schneider had not given it timely notice. On May 10, 1991, Evanston filed a declaratory judgment action against Schneider, claiming that Evanston's policy did not cover the Zachery cases.[3] Evanston had not disputed its coverage prior to the verdict.

On July 9, 1991, the district court, in a written order, found that the wrongful death award was "plainly excessive, shocking, and well outside the range within which a reasonable jury could properly operate;" and that "the award in Allyson Zachery's case shocks the conscience and is outside the range within which a

---

[3]Faced with the prospect of maintaining that Stonewall and Schneider should have recognized the vast potential of the Zachery claims and given earlier notice to it, while simultaneously negotiating settlement with plaintiff which required some downplaying of those claims, Evanston agreed to dismiss its declaratory judgment action against Schneider without prejudice and the parties' agreed to reserve their rights with respect to each other.

The parties disagree on the effect this agreement had on Evanston's subsequent tender of its policy limits to Schneider in the settlement negotiations after the first verdict. We do not decide the validity or scope of the reservation of rights because we hold that Schneider did not breach the policy requirement for timely notice and Evanston, therefore, owed Schneider the coverage.

reasonable jury could properly operate." The court set aside both verdicts as to damages, and granted a new trial as to damages on the wrongful death, personal injury, and punitive damages claims.[4]

On April 3, 1992, some nine months after the verdicts had been set aside, the insurers presented Zachery with a structured settlement offer worth $3.5 million. On June 10, 1992, Stonewall tendered to Evanston the Stonewall policy limits of $5 million to be used in further settlement negotiations.

On October 21, 1992, the second trial began. On October 21 or 22, Evanston tendered its policy limits of $2.5 million to Schneider for use in ongoing settlement negotiations. On October 22, 1992, Reynolds agreed on behalf of plaintiffs to accept $7.5 million in settlement, and the cases were settled.

In January of 1994, Evanston filed suit against Schneider, Truck and Stonewall. The thrust of Evanston's complaint is that each defendant had a duty to provide notice to Evanston of the Zachery claims, but failed to do so. In addition, Evanston claims that Stonewall negligently, and/or in bad faith, failed to settle the Zachery claims within Stonewall's policy limits. Evanston seeks to recover the $2.5 million that it paid to Zachery. Schneider moved for permission to file a cross-claim against Stonewall for indemnity should Schneider be found liable.

All the parties filed motions for summary judgment. The district court denied Schneider's motion for summary judgment

---

[4]The district court also admitted error in the jury instruction on the measure of damages for the wrongful death claim; that a new trial on punitive damages was warranted due to the newly discovered evidence, and that a new trial as to damages was warranted due to improper argument of plaintiffs' counsel.

against Evanston, and granted summary judgments in favor of Truck, Stonewall and Stonewall Surplus. Schneider's motion for permission to file a cross-claim against Stonewall was also denied. Pursuant to Fed.R.Civ.P. 54(b), the district court found there was no just reason for delay and directed the clerk to enter final judgments for Truck, Stonewall Insurance and Stonewall Surplus against Evanston. Evanston appeals these judgments. Schneider moved for and received permission to take an interlocutory appeal from the denial of its motion for summary judgment. We review the grant, or denial, of summary judgment *de novo*. *TRM, Inc. v. United States,* 52 F.3d 941 (11th Cir.1995); *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1117 (11th Cir.1993).

## II. DISCUSSION

A. *Truck's and Stonewall's Summary Judgment Motions*

1. Evanston's Rights Against Truck and Stonewall

Truck and Stonewall moved for summary judgment on the grounds that they neither owed nor breached any duty to Evanston. There is no dispute that Truck and Stonewall have no direct contractual relationship with Evanston. Truck's and Stonewall's contracts are with their insured, Schneider. Therefore, Truck and Stonewall contend that Evanston's rights, if any, against them are derived from their contracts with Schneider; any duties they owe Evanston are a function of its position as subrogee of Schneider. Furthermore, Truck and Stonewall claim the right under the principles of equitable subrogation to assert against Evanston all the defenses they could assert against Schneider.

In a diversity case, we apply state law as we would expect

that state's highest appellate court to apply it.  *Flintkote Co. v. Dravo Corp.,* 678 F.2d 942, 945 (11th Cir.1982).   Although some state courts have suggested there may be a direct duty of care from one excess insurer to a higher level excess insurer, *see e.g., Hartford Accident & Indemnity Co. v. Michigan Mutual Ins. Co.,* 93 A.D.2d 337, 462 N.Y.S.2d 175, 178-79 (1983), *aff'd,* 61 N.Y.2d 569, 475 N.Y.S.2d 267, 463 N.E.2d 608 (1984);      *Estate of Penn v. Amalgamated General Agencies,* 148 N.J.Super. 419, 372 A.2d 1124, 1127 (1977), the law of Georgia (the place of the accident) and Wisconsin (Schneider's domicile and, perhaps, the place of contracting) is to the contrary.[5]

Under both Georgia and Wisconsin law, any duties Truck and Stonewall owed Evanston were derivative of their contractual relationship with Schneider.  *Home Ins. Co. v. North River Ins. Co.,* 192 Ga.App. 551, 385 S.E.2d 736 (1989);  *Kranzush v. Badger State Mut. Cas. Co.,* 103 Wis.2d 56, 307 N.W.2d 256 (1981).  *See also Great American Ins. Co. v. International Ins. Co.,* 753 F.Supp. 357 (M.D.Ga.1990).[6]  In *Home Ins.,* the Court of Appeals of Georgia affirmed an excess insurer's right to bring suit against a primary insurer when *based upon the doctrine of equitable subrogation.*  The court adopted the reasoning of the trial court which:

---

[5]We need not decide which state's law is applicable since they are the same.

[6]We reject Evanston's contention that *Great American* is to the contrary.  The district court in that case misquoted an earlier Georgia opinion to suggest there might be direct duties between excess carriers, and then went on to adopt the holding of *Home Insurance* that rights as between excess insurers are based upon their relationship to the insured and the doctrine of equitable subrogation.

concluded that when an insurance company defends its insured pursuant to a policy of liability insurance against a claim which seeks damages in excess of the policy's limits and a judgment is returned in excess of those limits an insurance company which issued a policy of excess or umbrella coverage to that insured is equitably subrogated to any rights the insured might have against its primary carrier for negligent failure to settle. Thus, the trial court found plaintiff to be subrogated to the rights of its insured....

*Id.* 385 S.E.2d at 739-40.

The Supreme Court of Wisconsin in *Kranzush* stated:

[O]ur cases indicate that the insurer's duties of diligent investigation, notice of excess liability potential, and communication of settlement offers run to the insured, and the cause of action upon their breach belongs to the insured. In every one of our excess liability bad faith cases the plaintiff is either the insured or the assignee of the insured's claim.

307 N.W.2d at 260-61. *See also Teigen v. Jelco, Inc.,* 124 Wis.2d 1, 367 N.W.2d 806, 811 (1985) ("[W]e refuse[ ] to extend the obligation of good faith beyond the relationship between the insurer and its insured.")

The Seventh Circuit Court of Appeals in addressing this issue has observed:

There are hints (no more) of such a duty in a handful of cases from New York and New Jersey, but the overwhelming majority of American cases describe the duty that a primary insurer owes an excess insurer as one derivative from the primary insurer's duty to the insured. The principal contemporary support for the idea of a direct duty comes from decisions from district judges in the Northern District of Illinois in diversity cases such as this. We are not clear why these judges expect that the Supreme Court of Illinois would buck the national trend.

*Twin City Fire Ins. Co. v. Country Mut. Ins. Co.,* 23 F.3d 1175, 1178 (7th Cir.1994).

The Seventh Circuit went on to conclude:

Should courts strain to create novel tort duties on behalf of insurance companies? Do insurance companies need the protection of tort law against their own insureds and other insurance companies? We need not answer these

questions.  It is enough that the arguments in favor of the direct duty are not so compelling....

*Id.* at 1180-81 (citations omitted).  We find no support in the law of Georgia or Wisconsin for a contrary result.

In the absence of any direct contractual or privity relationship between these excess insurers, or any Georgia or Wisconsin law holding otherwise, we hold that Evanston's rights in the present suit against Truck and Stonewall are derived through the duties owed by Truck and Stonewall to their own insured Schneider, and Evanston's position as subrogee of Schneider.

2. Evanston's Claims Against Stonewall and Truck

Evanston claims that Stonewall and Truck breached their duties to it by failing to give timely notice of Evanston's liability exposure as required by the terms of Evanston's excess liability policy which it issued to Schneider.  Evanston also claims that Stonewall negligently or in bad faith refused to settle the Zachery claims within Stonewall's policy limits.  As subrogee of Schneider, however, Evanston stands in its shoes, subject to all defenses available to Stonewall and Truck against Schneider.

Through counsel, Corry and Porter,[7] Schneider was present at and knew as much about the Zachery cases as did Stonewall and Truck.  Stonewall and Truck derived their knowledge of the cases, in large part, from Schneider's lawyers, Corry and Porter.  Even Corry and Porter did not know of Evanston's existence as excess carrier until shortly before trial.

---

[7]Although paid by Stonewall, Schneider selected Corry and Porter.  No party has argued that they did not act in accordance with this obligation.

The record reveals that Corry and Porter were fully aware of and never complained of Persons' handling of the settlement negotiations prior to the first verdict. It is clear that at that time they did not believe the cases were worth the $5 million coverage afforded by Stonewall and Truck. Schneider's own risk manager evaluated the case at no greater than $2.5 million.

On October 1, 1990, Porter informed Schneider that plaintiffs' counsel was willing to recommend a settlement for $5 million. There is nothing in the record to indicate, assuming the offer to settle for $5 million was bona fide, [8] that Stonewall's failure immediately to accept the offer arose from failure to give Schneider's interest and the interests of its subrogee the same consideration given Stonewall's own. Nor is there any suggestion that Schneider urged Persons to secure authority from Stonewall to extend a $5 million dollar settlement offer, even though the record shows that Schneider knew of Stonewall's $5 million reserve. On the contrary, the record is clear that Schneider, Persons, Corry, and Porter all agreed that the verdict would not reach or exceed $5 million. No one urged a positive response to the $5 million settlement suggestion.

Based upon these undisputed facts, Schneider itself could not successfully assert claims of lack of notice or failure to settle against Stonewall or Truck. Evanston, whose rights in this suit are derivative of Schneider's, stands in its shoes as against Stonewall and Truck. Therefore, the district court properly

[8]There is some question whether this was a settlement offer or only an invitation to the defense to make an offer of $5 million.

granted Stonewall's and Truck's motions for summary judgment against Evanston.

B. *Schneider's Summary Judgment Motion*

Evanston's claim against Schneider is that Schneider failed to give it timely and adequate notification of the accident, the Zachery claims, and of the suits. The liability policy issued to Schneider by Evanston provides, among other things:

> [Schneider] shall immediately give to [Evanston] written notice directed to Shand, Morahan & Company, Inc., 1 American Plaza, Evanston, Illinois 60201 of an occurrence, claim or suit *which is reasonably likely to involve [Evanston] under this policy.* (emphasis added)

Schneider claims that it fully complied with this provision. In fact, Schneider contends that, when it gave notice on or about September 26, 1990, it did so as a courtesy; it was not required to do so at that time because both its own attorneys, Stonewall's attorney Persons, and Stonewall's evaluator, Anderson, all appraised the Zachery cases at less than $5 million, the point at which Evanston's coverage would become "involved."

The district court held that material facts remain in dispute regarding this issue. The court ruled that it could not say, as a matter of law, that it was not "reasonably likely" that an amount in excess of $5 million was "involved" before September 25, 1990, such that Schneider should have given notice to Evanston prior to that time.

We disagree. Whether notice is timely is ordinarily a question of fact for the jury to determine. *Maryland Cas. Co. v. Sammons,* 99 F.2d 323 (5th Cir.1938). However, where the facts as asserted by the insured are such that, if established, there could

be no recovery, or where the undisputed facts are such that would preclude the insured's recovery, then the question becomes one of law for determination of the court and a proper matter for disposition by summary judgment. *State Farm Mut. Auto. Ins. Co. v. Coleman,* 441 F.2d 329, 332 (5th Cir.1971); *Cotton States Mut. Ins. Co. v. International Surplus Lines Ins. Co.,* 652 F.Supp. 851, 853 (N.D.Ga.1986). Such is the case here.

The parties have spent considerable time debating whether "reasonably" is an objective or subjective measure of "likely." We hold that under either standard, prior to the first verdict, Schneider was never required to conclude that it was "reasonably likely" that Evanston's coverage would become "involved" in the Zachery claims against Schneider.

Under this policy, when notice is required is, necessarily, a question of judgment. It could not be otherwise. Notice is required whenever excess coverage involvement is "reasonably likely." This phrase, although susceptible of different meanings, clearly contemplates that the insured is not required to give notice every time there is a claim against it. Nor does the policy require notice upon the mere possibility that the excess will be involved. If this were intended, the policy would simply require notice of all claims against the insured. In interpreting an excess policy which required notice whenever "an occurrence is *likely* to involve indemnity," the Court of Appeals of Georgia held that the word "likely" means "probable" not merely possible. *Lumbermens Mut. Cas. Co. v. Plantation Pipeline Co.,* 214 Ga.App. 23, 447 S.E.2d 89, 91 (1994).

Notice is required only when it is "reasonably likely" that the claim will be found to have a value in excess of the primary insurance limits. "Reasonable" to whom? The insured's appraisal will have to control unless, as a matter of law, it is unreasonable.

The fact is that excess carriers are not interested in receiving notice of every claim against their insureds. The excess insurer does not undertake to defend the insured. Consequently, the excess insurer is not interested in every accident, but only in those serious enough to involve it. Excess policies, therefore, usually require an assured to give notice of claims that appear "likely to involve" the excess.

Under the notice provision of the excess policy "the exercise of some judgment on the part of the assured in evaluating the case is contemplated." Herbert C. Brook, 21*Ins. Counsel J.* 131 (April, 1954). This standard requires the insured to base its judgment regarding the amount of the claim against it upon sound reasons. Mere guesswork will not be enough; ignorance is no defense. An insured cannot be heard to say it did not know when it did not inquire. The insured must use due diligence and take appropriate steps to make an informed judgment regarding the nature and amount of the claim. *See Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc.,* 132 Ga.App. 714, 209 S.E.2d 6 (1974) (requirement for notice met so long as notice is given "with reasonable diligence and within a reasonable length of time in view of attending circumstances of each particular case").

Nevertheless, it is equally clear that, as judgment is

involved, reporting perfection will not be attained.  Nor does the policy language protect Evanston against a judgment that was not "reasonably likely" but which, nonetheless, materializes.  As the drafter of the contract, Evanston must shoulder this risk. *Liverpool & London & Globe Ins. Co. v. Kearney,* 180 U.S. 132, 21 S.Ct. 326, 45 L.Ed. 460 (1901) ("The general rule ... is ... that where a policy of insurance is so framed as to leave room for two constructions, the words used should be interpreted most strongly against the insurer.")

In this case, Schneider reported the accident to its primary insurer on the day of the accident.  Schneider also employed Custard Insurance Adjusters to develop the facts of the accident.  Custard reported its results to Schneider.  Schneider had competent counsel who, by all accounts, performed competently.  Stonewall had competent counsel who, by all accounts, performed competently.  No one involved with the Zachery claims valued them at more than $5 million prior to the first verdict—not Corry and Porter, not Persons or Anderson, not even plaintiff's own expert.  After over two and one-half years of litigation, and six months prior to the first trial, plaintiffs furnished Schneider with a report from their economic expert that indicated a maximum economic value for both cases of $3.4 million.[9]  At the close of the first trial, both

---

[9]It is true that plaintiffs' counsel filed an amendment to his pre-trial order, in the nature of an *ad damnum,* praying for damages of approximately $7 to $11 million, compensatory damages, and $3 million, punitive.  This demand, however, was not consistent with the evaluations of those associated with the case at that time.  An insured is not required to conclude that a claim is "reasonably likely" to produce a loss equal to plaintiff's demand.  Requiring notice whenever the demand exceeds primary coverages could be, but was not, made a part of the

Corry and Persons, the lawyers in the best position to evaluate the cases, valued the cases at less than $3.5 million.

On October 2, 1990, the jury returned combined verdicts totaling $23.2 million. Although it had been notified of the claims on September 25, 1990, it was only *after* this verdict that Evanston sought to repudiate its coverage under the excess policy for failure of timely notice.

Evanston urges the testimony of several experts who, after-the-fact, offer their opinions that the Zachery cases were "clearly" worth more than the $5 million trigger for its excess coverage. Furthermore, one of Evanston's experts testified that "good insurance practices" would have dictated that Schneider notify Evanston long before it did.[10]

The issue of breach of contract, *vel non,* however, does not concern good insurance practices. It does not even concern whether, in fact, the Zachery cases were evaluated *incorrectly* by everyone, since the jury ultimately rendered a verdict far in excess of that amount.

To borrow a phrase, this issue concerns "what Schneider knew,

_____

contract.

[10]The only other evidence cited by Evanston in support of its view that Schneider should have valued the cases at more than $5 million are (1) a letter written by Porter stating that a "jury verdict in the second trial could easily exceed ten million dollars," and (2) Stonewall's setting its reserves at $5 million shortly before the first verdict. Porter's letter, however, was written *after* the first verdict, and after actual notice had been given to Evanston. The undisputed testimony regarding Stonewall's $5 million reserve was that it was a matter of trial management strategy and that use of the authorized settlement funds would depend on the evaluations of the case by Persons and Anderson which continued to be substantially less than $5 million.

and when it knew it." Schneider's actions can be properly evaluated only in this context. We do not ask whether Schneider's evaluation of the case was "correct" or "mistaken" but whether, at the time, it was based upon reason. We do not even ask whether it would have been reasonable to give notice, as Evanston's experts now suggest. Rather we must determine whether it was reasonable for Schneider *not* to notify Evanston.

Under the circumstances prior to the first verdict, did Schneider exercise due diligence in gathering information regarding the claims, make an informed judgment and come to a reasonable evaluation of less that $5 million? If so, then it fulfilled its contractual duty to Evanston. Whether it turned out later that Schneider's evaluation was incorrect is irrelevant under the contract. The contract only requires that Schneider exercise good judgment, and notify Evanston of all claims "reasonably likely" to involve its coverage. The contract does not, indeed could not, require that Schneider be right 100% of the time.

Furthermore, even if "good insurance practices" would have dictated that Schneider notify Evanston earlier, the contract did not. If, under a contract the doing of either one of two or more acts would be reasonable, the doing of either will discharge the contractual duty.

Under Evanston's contract, both the giving of notice and the failure to give earlier notice may have been authorized in this case. Presumably the giving of notice could never breach the contract, even though it may not be good insurance practice to give it in every case. Nevertheless, with no reason to believe, prior

to the first verdict, that its liability would reach, much less exceed, $5 million, Schneider's failure to give earlier notice to Evanston did not breach the contract either.

The Court of Appeals of Georgia has held no notice reasonable as a matter of law in a similar case. *Lumbermens Cas. Co.,* 447 S.E.2d at 91. In that case, the insured sought to recover the costs of an oil spill clean-up under an excess policy which provided coverage only after liability exceeded $3 million. The excess carrier denied coverage based upon the insured's failure to timely notify it of the claim.

The court noted that in an excess policy "the notice obligation is triggered by the insured's assessment of the likelihood of the monetary amount of the property damage for which it may be liable exceeding the "ceiling' of the primary policy." Since the insured's costs of clean-up totalled less than $25,000 after nine years of recovery operations, the court concluded that "[g]iven these facts, and considering that [the excess carrier] has pointed to no other facts showing that [the insured] should have known that its liability would exceed $3,000,000 and that the limits of the [primary] policy would even be reached, much less exceeded, no basis existed for finding that the [excess carrier's] policy would become "involved.' " *Id.* The insured's evaluation of the claim as not requiring notice was reasonable as a matter of law. *Id.*

In this case, the insured's evaluation of the claim was based upon advice from competent attorneys representing both itself and other excess insurers. No one suggested that the Zachery claims

would exceed $5,000,000. Therefore, Schneider's failure to give earlier notice to Evanston was reasonable as a matter of law. The trial court incorrectly denied summary judgment to Schneider on this issue.

## III. CONCLUSION

The district court correctly determined the legal rights and duties as between Evanston and the other insurers. Accordingly, we affirm the grant of summary judgment to Truck, Stonewall Surplus and Stonewall Insurance. The district court erred in denying summary judgment to Schneider and we reverse that denial and grant summary judgment to Schneider against Evanston. Accordingly, the judgments as to Truck, Stonewall Surplus and Stonewall Insurance are AFFIRMED, and the denial of summary judgment to Schneider is REVERSED and the case is REMANDED for the entry of summary judgment for Schneider.