[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13824

_____

D.C. Docket No. 1:18-cv-00367-TWT


MT. HAWLEY INSURANCE COMPANY,

                              Plaintiff–Counter Defendant–Appellee,

                              versus

EAST PERIMETER POINTE APARTMENTS,

                              Defendant–Third Party Plaintiff–Counter
                              Claimant–Appellant,

MIRANDA WILDER,
CONSTANCE IRIONS,
ADRIAN JOHNSON,

                              Defendants–Appellants,

LEXINGTON INSURANCE COMPANY,

                              Third Party Defendant–Appellee,

VENTRON MANAGEMENT, LLC,

                              Defendant–Third Party Defendant–Counter
                              Claimant–Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(May 27, 2021)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR, Circuit Judge, and SELF,[*]
District Judge.

SELF, District Judge:

While Georgia's courts have always relied on *lex loci contractus* to decide

contractual disputes involving a foreign state's statutory law, this maxim has also

established that Georgia courts hawkishly apply its common law to the exclusion

of every other state. In this case, the district court determined that this insurance-

coverage dispute rested on the common law; thus, as an *Erie*-bound district court

in Georgia, it correctly decided that the insureds' two-year delay in notifying their

insurers about an occurrence barred coverage as a matter of Georgia common law.

**I.**

This federal case arose from two state-court lawsuits filed to recover

damages for an assault and murder at an apartment complex owned by East

Perimeter Pointe Apartments, LP in Decatur, Georgia. Both lawsuits allege that

East Perimeter and Ventron Management, LLC, the company contracted by East

_____

[*] Honorable Tilman E. Self, III, United States District Judge for the Middle District of
Georgia, sitting by designation.

2

Perimeter to provide property-management services for the complex, negligently provided security so that they are liable in tort. One seeks to recover personal injury damages and damages for the wrongful death of Marcus Wilder, and the other seeks personal injury damages due to an assault suffered by Adrian Johnson.

On December 26, 2015, Adrian Johnson went to visit Marcus Wilder at the apartment complex, and while Johnson was alone inside Wilder's apartment, several assailants broke into the unit and brutally assaulted him. After visiting Johnson in the hospital, Wilder returned home to his apartment. However, unbeknownst to Wilder, one of the assailants remained in his apartment and hid in a closet waiting for him to return. When Wilder went into his bedroom, the attacker sprang from the closet and shot him in the head with a handgun. Wilder died just outside his apartment.[1]

Within hours of learning about the shooting, a manager at the apartment complex wrote and emailed an incident report to Ventron's general counsel and registered agent, Michael Scaljon. Thirteen days later, Ventron received a letter from Evon Williams, the attorney hired to represent the litigants in the state-court lawsuit for Wilder's murder. In that letter, Williams asked for insurance information, "a copy of all applicable policies with declaration pages," and for

---

[1] The lawsuits concerning Wilder's death and Johnson's assault were filed in the State Court of DeKalb County on October 12, 2017, and December 4, 2017, respectively.

Ventron to "forward our request for information to all affected insurers." Mt. Hawley Insurance Company had issued a commercial general liability insurance policy, and Lexington Insurance Company had issued a commercial umbrella liability policy that ostensibly covered the apartment complex. Despite Williams' letter, however, roughly two years passed before East Perimeter or Ventron notified either insurance company about the murder and assault.

The Mt. Hawley Policy does not include either East Perimeter or Ventron as named insureds. Instead, it lists California-based, risk-purchasing group, "Skinner Select, WCPP Risk Purchasing Group[,] Inc.," as the named insured.[2] To put it simply, risk-purchasing groups, like Skinner Select, are used to insure multiple entities that are all similar in nature, like apartment complexes, but do not have the same ownership, under one policy. And while not specifically named as an insured in the Mt. Hawley Policy, it includes "Osgoode Properties"[3] and "Crestview Apartments, 4946 Snapfinger Woods Drive, Decatur GA" in its "Named Insured and Location Supplementary Schedule."

As to the critical issue of notice, an endorsement to the Mt. Hawley Policy provides that "[i]n the event of any occurrence that may result in a claim against

---

[2] Skinner Select is another name for WCPP Risk Purchasing Group, Inc.

[3] Stephen Greenberg is the President and a representative of East Perimeter, the President of Osgoode Properties Ltd., and the President of East Perimeter Pointe GP Inc.

4

this policy, the insured will immediately report such occurrence and cooperate fully with the following claim adjusting company: RLI ADJUSTING COMPANY." In addition to this endorsement, the Mt. Hawley Policy also provides a standard provision for certain "Duties In The Event Of Occurrence, Offense, Claim Or Suit." This condition provides, in relevant part:

a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)    How, when and where the "occurrence" or offense took place;

(2)    The names and addresses of any injured persons and witnesses; and

(3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.    If a claim is made or "suit" is brought against any insured, you must:

(1)    Immediately record the specifics of the claim or "suit" and the date received; and

(2)    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.    You and any other involved insured must:

(1)    Immediately send us copies of demands, notices, summonses or legal papers received in connection with the claim or "suit"[.]

5

Notwithstanding the clear language from both the endorsement provision and the standard provision, Mt. Hawley first received notice of the shooting on November 13, 2017, the day it received a copy of the underlying state-court complaint related to Wilder's murder. With regard to Johnson's assault, Mt. Hawley first received notice on December 6, 2017, when Ventron sent it a copy of the incident report it created just hours after the incidents. Although this notice came only two days after Johnson filed his state-court lawsuit on December 4, 2017, his assault occurred almost two years earlier.

For incidents where the "total applicable limits" for the "scheduled underlying insurance" provided by Mt. Hawley were exhausted or where the damages sought could not be covered by the "scheduled underlying insurance," Lexington issued Skinner Select an umbrella policy for excess coverage. Lexington, like Mt. Hawley, understood that Skinner Select did not own East Perimeter's apartment complex but that it was merely a conduit through which owners and managers of commercial property purchase insurance. Similar to the Mt. Hawley Policy, the Lexington Policy also contains a section for "Duties in the Event of an Occurrence, Claim or Suit." This provision provides:

1.    You must see to it that we are notified as soon as practicable of an "occurrence" that may result in a claim or "suit" under this policy. To the extent possible, notice should include:

    a.    How, when and where the "occurrence" took place;

      b.      The names and addresses of any injured persons and any witnesses; and

      c.      The nature and location of any injury or damage arising out of the "occurrence".

2.      If a claim is made or "suit" is brought against any "Insured" which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable on the assumption that an "Insured" is liable for the damages claimed. . . .

3.      You and any other involved "Insured" must:

      a.      Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "Suit";

      b.      Authorize us to obtain records and other information;

      c.      Cooperate with us in the investigation, settlement or defense of the claim or "Suit"; and

      d.      Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the "Insured" because of injury or damage to which this insurance may also apply.

Lexington did not receive notice of the incident and the underlying state-court lawsuits until February 20, 2018. Because of the significant gap between when East Perimeter and Ventron learned of the incidents at the apartment complex and when they notified the insurance companies, Mt. Hawley and Lexington sought a declaratory judgment that their insureds had failed to satisfy a condition precedent of the policies so that under Georgia law neither company would be required to pay. Similarly, East Perimeter, Ventron, and the individual

defendants cross-moved for summary judgment on the basis that California law applied. The district court agreed with the insurance companies, and this appeal followed.

## II.

We review a summary-judgment ruling *de novo*, applying the same standard as the district court. *Newcomb v. Spring Creek Cooler Inc.*, 926 F.3d 709, 713 (11th Cir. 2019). That is, we must "view all of the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.* (quoting *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 342 (11th Cir. 2012)). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Before we can decide whether the delay of notice bars coverage as a matter of Georgia law, Georgia law has to control. So, like the district court, we divide our discussion into two parts. We first review the district court's decision to apply Georgia law. Then, if we agree, we consider whether the delay was unreasonable as a matter of law such that summary judgment against East Perimeter and Ventron was appropriate.

*A.  Choice of Law*

East Perimeter and Ventron (as well as appellants Miranda Wilder, Constance Irions, and Adrian Johnson) contend that California law should govern this lawsuit. As basic contract law goes, an insurer can assert breach-based defenses against coverage when its insured fails to satisfy a condition precedent contained in an insurance policy. But, in California, an insured's breach regarding notice provisions doesn't preclude coverage unless the breach substantially prejudiced the insurer.[4] *Campbell v. Allstate Ins. Co.*, 384 P.2d 155, 156 (Cal. 1963); *Abrams v. Am. Fid. & Cas. Co.*, 195 P.2d 797 (Cal. 1948). Relying on this "decisional law" as a means to bolster its public policy against technical forfeitures, California's notice-prejudice rule "requires an insurer to prove that the insured's late notice of a claim has substantially prejudiced its ability to investigate and negotiate payment for the insured's claim." *Pitzer Coll. v. Indian Harbor Ins. Co.*, 447 P.3d 669, 674 (Cal. 2019); *Ins. Co. of State of Pa. v. Associated Int'l Ins. Co.*, 922 F.2d 516, 523–24 (9th Cir. 1990). Delays in notice, by themselves, do not presume prejudice, and "a 'mere possibility' of prejudice will not suffice." *Pitzer Coll.*, 447 P.3d at 674; *Associated Int'l*, 922 F.3d at 524. Only "[a] finding of

---

[4] "[B]ased on the rationale that the essential part of [an insurance contract] is coverage," California's Supreme Court has deemed this notice-prejudice rule "a fundamental public policy of California." *Pitzer Coll. v. Indian Harbor Ins. Co.*, 447 P.3d 669, 676 (Cal. 2019).

substantial prejudice will generally excuse the insurer from its contractual obligations under the insurance policy[.]" *Pitzer Coll.*, 447 P.3d at 674.

With California's public policy giving strong favor to compensation for insureds over technical forfeitures of coverage, California law places a heavy burden on insurance companies seeking to defend against coverage based on an insured's breach of a notice provision. *Id.*; *Associated Int'l*, 922 F.3d at 524. One quickly understands why East Perimeter and Ventron urge this Court to apply California's notice-prejudice rule—it greatly increases their chance of a coverage payout.

In contrast, Mt. Hawley and Lexington argue that Georgia law governs this insurance-coverage dispute. Unlike California law, Georgia law doesn't require an insurance company to prove that it was prejudiced by an insured's breach of a notice provision. Under Georgia law, "when an insurance policy includes a notice requirement as a condition precedent to coverage, and when the insured unreasonably fails to timely comply with the notice requirement, the insurer is not obligated to provide a defense or coverage." *Forshee v. Emps. Mut. Cas. Co.*, 711 S.E.2d 28, 31 (Ga. Ct. App. 2011). Just as East Perimeter and Ventron want California law to apply so that they are one step closer to obtaining coverage, Mt. Hawley and Lexington want Georgia law to apply so that it bars coverage.

10

Now, on to the choice-of-law issue. A federal court sitting in diversity applies state law using the choice-of-law rules of the forum state. *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014). Thus, we look to Georgia's choice-of-law requirements to determine which state's law will apply. *Frank Briscoe Co. v. Ga. Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983) ("A federal court faced with [a] [choice-of-law] issue must look for its resolution [in] the [choice-of-law] rules of the forum state.").

Since 1847, Georgia has used the *lex loci contractus* rule to govern contracts. *Gen. Tel. Co. of Se. v. Trimm*, 311 S.E.2d 460, 461 (Ga. 1984). The rule provides that contracts, like insurance policies, "are to be governed as to their nature, validity[,] and interpretation by the law of the place where they are made." *Travelers Prop.*, 763 F.3d at 1270–71 (quoting *Trimm*, 311 S.E.2d at 461). And under Georgia law, an insurance contract is made, not where it was executed, but where it was delivered—where the last act essential to the completion of the contract was done. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998); *see also Pink v. A.A.A. Highway Express*, 13 S.E.2d 337, 337 (Ga. 1941); *Trimm*, 311 S.E.2d at 461.

East Perimeter and Ventron argue that California law applies because a wholesale insurance broker delivered the policies to East Perimeter's retail

11

insurance broker, M.G. Skinner & Associates,[5] in California. Yes, knowing "where" an insurance policy was delivered is critical in adhering to *lex loci contractus* so that a court can apply the appropriate state law. But, the Georgia Supreme Court has made it clear that *lex loci contractus* only permits Georgia courts to consider a foreign state's law when it involves its statutes or judicial decisions on those statutes. *Coon v. Med. Ctr., Inc.*, 797 S.E.2d 828, 833–34 (Ga. 2017). Where a foreign state has adopted the English common law and there is no statute from that state to govern a contractual dispute, the outcome of the dispute can then only be determined by that state's common law. *Id.* at 834. And when a foreign state's common law is in play, Georgia courts and federal courts in Georgia will apply "the common law as expounded by the courts of Georgia[,]" not the common law of that foreign state. *Id.*

In other words, if—as East Perimeter and Ventron argue—the insurance policies were delivered in California, Georgia's *lex loci contractus* choice-of-law rule would only require that the district court look to pertinent California statutes and California case law construing them. *Lex loci contractus*, however, clearly does not allow Georgia's own courts or Georgia-based federal courts to apply common law developed by judges in other states. *Id.* (citing *Lay v. Nashville,*

---

[5] M.G. Skinner is an affiliated entity of Skinner Select and acted as the retail broker on the insurance policies. In other words, M.G. Skinner was the retail agent that had the direct relationship with the actual insured (Skinner Select) that purchased the insurance policies.

*Chattanooga & St. Louis R.*, 62 S.E. 189, 189 (Ga. 1908)) ("While the courts of [Georgia] will follow the decisions of a sister state in construing the statutes thereof, they are not bound by the interpretation placed upon the common law by the courts of other states."). When the Georgia Supreme Court adopted *lex loci contractus* as its choice-of-law rule, "the prevailing view at the time . . . was that there is one common law that can be properly discerned by wise judges, not multiple common laws by which judges make law for their various jurisdictions." *Coon*, 797 S.E.2d at 834.

The parties argue about whether the district court could have just presumed that the common law of England existed in California since it was neither embraced by nor was one of the original thirteen colonies. These arguments center around what is commonly referred to as the "presumption of identity" rule—Georgia's preference for its own common law over that of a foreign state's. But here, we don't need to presume anything. We have a California statute that explicitly says that it has adopted English common law. Thus, the controlling question is whether the common law prevails in another state, not whether that state was one of the original thirteen colonies.

With that in mind, let's ask ourselves that controlling question: Is the common law in force in California? It is. California adopted English common law by statute when it entered the Union. Cal. Civ. Code. § 22.2; Edwin W. Young,

13

*The Adoption of the Common Law in California*, 4 Am. J. Legal Hist., 355 (1960).

And, because California's notice-prejudice rule relies on California's decisional

(common) law as opposed to statutory law, the Georgia Supreme Court has clearly

held that we cannot use it to decide this insurance dispute. *Coon*, 797 S.E.2d at

834; *Associated Int'l*, 922 F.3d at 523; *Pitzer Coll.*, 447 P.3d at 676.

At bottom, the Georgia Supreme Court's position is clear. If the law to be

applied to a contract dispute by a Georgia court or a federal court in Georgia is

judicially-created, then "the common law as expounded by the courts of Georgia"

must govern.[6] *Coon*, 797 S.E.2d at 834; *Motz v. Alropa Corp.*, 15 S.E.2d 237, 238

(Ga. 1941) (". . . [W]here only some rule of the common law of England is

involved, in determining rights governed by the law of another State where the

common law prevails, the construction of the common law given by the courts of

this State will control[.]"). In making decisions for contractual disputes, these

courts simply cannot look to the common law as it is developed by judges in

foreign states. The only time deference must be given to a foreign state's law is

---

[6] This remains true notwithstanding the California Supreme Court's authority to unilaterally declare fundamental public policy for California through its decisions. *Pitzer Coll.*, 447 P.3d at 676. Ventron argues that when the California Supreme Court exercised that authority with respect to its notice-prejudice rule, it acted similar to a legislature passing a statute abrogating the common law. Thus, Ventron would have this Court expand *Coon* to elevate those sorts of judicial decisions so that they are effectively treated as foreign statutes. We are not persuaded. When it comes to determining the law of another state, *Coon* flatly limits Georgia courts (and federal courts in Georgia) to the consideration of "another state's statutes" and "judicial decisions authoritatively interpreting those statutes[.]" 797 S.E.2d at 834. It simply isn't our place to expand such a clear rule.

14

when that law comes from a statute or judicial decisions interpreting that statute. *Coon*, 797 S.E.2d at 834. And since there is no California statute that directly governs the outcome of this insurance-coverage dispute, the district court correctly applied Georgia, not California, law. Because we think Georgia law is clear on the choice-of-law question, we decline the invitations of East Perimeter and Ventron to certify that question to the Georgia Supreme Court.

## B. Notice

Once the district court decided to apply Georgia law, it was free to rule on the issue of notice at the summary-judgment stage. And having concluded that this case was properly decided using Georgia common law, we may now address whether the district court erred in determining that notice to the insurance companies was dispositively late as a matter of law.

Before diving into what the law in Georgia is, let's review the notice provisions from each policy. The Mt. Hawley Policy has two: an endorsement provision and a standard policy provision. The endorsement provision states that "[i]n the event of any occurrence that may result in a claim against this policy, the insured will immediately report such occurrence and cooperate fully with the . . . claim adjusting company[.]" The standard provision states that "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." Nearly identical to the standard provision within the Mt.

15

Hawley Policy, the Lexington Policy states that "You must see to it that we are notified as soon as practicable of an 'occurrence' that may result in a claim or 'suit' under this policy." Based on these provisions, Mt. Hawley and Lexington argue that East Perimeter and Ventron failed to timely report the incidents that occurred at the apartment complex. Notice provisions, like those contained in the Mt. Hawley and Lexington Policies, "must be complied with, absent a showing of justification." *Plantation Pipeline Co. v. Royal Indem. Co.*, 537 S.E.2d 165, 169 (Ga. Ct. App. 2000). And the notice provisions in both policies are conditions precedent to coverage. *See Bramley v. Nationwide Affinity Ins. Co. of Am.*, 814 S.E.2d 770, 773 (Ga. Ct. App. 2018).

When it comes to an insured's adherence to notice provisions, Georgia case law is quite settled. Insurance companies aren't obligated to defend an insured or provide coverage if the insured unreasonably failed to comply with a conditional notice requirement. *Forshee*, 711 S.E.2d at 31. This law is drastically different than California law requiring insurance companies to show that a notice-related breach caused substantial prejudice to their ability to investigate or negotiate a claim. *Pitzer Coll.*, 447 P.3d at 674; *Abrams*, 195 P.2d 797, *supra*. So, looking at Georgia law, it required East Perimeter and Ventron to give notice of Wilder's murder and Johnson's assault "with reasonable diligence and within a reasonable length of time in view of the attending circumstances[.]" *Advocate Networks, LLC v.*

16

*Hartford Fire Ins. Co.*, 674 S.E.2d 617, 619 (Ga. Ct. App. 2009). However, if an insured can show that its failure to comply with a notice requirement was justified, Georgia law will obligate insurance companies to provide a defense or coverage. *Forshee*, 711 S.E.2d at 31.

With respect to Wilder's murder, Mt. Hawley didn't receive notice of the shooting until November 13, 2017. That's nearly 23 months. And as for Johnson's assault, it was just over 23 months before Mt. Hawley received notice. Ventron, the company hired to manage East Perimeter's apartment complex, argues that its delay in providing notice was justified because it "was not aware of the existence of coverage" provided by the Mt. Hawley Policy. The district court found this excuse to be unreasonable. We agree.

Ventron is a property management company engaged in the business of managing apartment complexes. Thus, based not only on the nature of its business but on the fact that someone was murdered on a property that it managed, we agree with the district court that something more than mere ignorance was required of Ventron to prevent a bar to coverage. *Allstate Ins. Co. v. Walker*, 562 S.E.2d 267, 268 (Ga. Ct. App. 2002).

For its part, East Perimeter argues that it could not have given Mt. Hawley notice earlier because it first learned of Johnson's assault when it was sued. But East Perimeter received notice through Ventron on the day of the murder and

17

assault, because Ventron was its agent.[7] *See Villazon v. Prudential Health Care Plan*, 843 So.2d 842, 853–54 (Fla. 2003); *Goldschmidt v. Holman*, 571 So.2d 422, 424 n.5 (Fla. 1990). The property-management agreement authorized Ventron to take a litany of actions in East Perimeter's name, enough so that we are certain it created an agency relationship. So, notice to the agent—Ventron—on the day of the incidents constituted notice to the principal—East Perimeter—on the same day. *Cat 'N Fiddle, Inc. v. Century Ins. Co.*, 213 So.2d 701, 703–04 (Fla. 1968). East Perimeter's excuse fails.

As for Lexington, 26 months passed before it received notice. Lexington was the excess provider in this case, and while it likely isn't interested in receiving notice of every claim against its insureds, it rightfully expected to be notified about these serious incidents. *Evanston Ins. Co. v. Stonewall Surplus Lines Ins. Co.*, 111 F.3d 852, 860–61 (11th Cir. 1997). East Perimeter argues that, at the time of the incidents, it "had no knowledge that its liability could exceed [the] primary limits" provided by Mt. Hawley. But, "[a]n insured cannot be heard to say it didn't know when it did not inquire." *Id.* at 861. We recognize that there are times where notice may not be required because "an event is so trivial or inconsequential that a court may properly conclude as a matter of law that no reasonable person would think

---

[7] The property-management agreement between East Perimeter and Ventron provides that it will be governed by Florida law.

18

that a claim could arise." *Forshee*, 711 S.E.2d at 31. Murder and brutal assaults, however, are neither trivial nor inconsequential.

Since the Lexington Policy required notice of incidents that "may result" in its involvement, the district court did not err when it concluded, "in view of the attending circumstances," the prolonged delays in this case were unreasonable as a matter of Georgia law. *Advocate Networks*, 674 S.E.2d at 619; *Evanston*, 111 F.3d at 861.

Accordingly, we affirm the district court's order such that neither Mt. Hawley nor Lexington have a duty to provide a defense or coverage to East Perimeter or Ventron for these incidents.

**AFFIRMED.**

19