558 So.2d 1048 (1990)
The PHOENIX INSURANCE COMPANY, Appellant,
v.
FLORIDA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellee.
No. 89-01021.
District Court of Appeal of Florida, Second District.
February 23, 1990.
Rehearing Denied March 26, 1990.
*1049 Edward E. Fessenden, Jr., Tampa, for appellant.
Dennis P. Waggoner of Hill, Ward & Henderson, P.A., Tampa, for appellee.
PATTERSON, Judge.
This appeal arises from a final order of dismissal with prejudice entered at the close of the plaintiff's case in a nonjury trial for equitable subrogation. We reverse.
On December 24, 1982, James Babcock, while an invitee on the rural premises of David Kitchen, came upon a caged tiger named Diablo (a Spanish word for "devil"). Apparently beguiled by the pleasant demeanor of the tiger, Babcock reached into its cage to pet it. The result was a severely mangled arm. Thereafter Babcock, joined by his wife Bonnie, brought a personal injury action against Kitchen as owner of the tiger.
At the time of the incident Kitchen had in force two insurance policies, each with $300,000 limits. Phoenix had issued a homeowner's policy and Florida Farm Bureau (FFB) had issued a commercial (farm) policy. Under each of these policies, the respective insurer had a primary duty to defend Kitchen. Both companies assumed defense of the case, and counsel provided by Phoenix took the lead role. FFB notified Kitchen that it was defending the claim under a reservation of rights of coverage defenses and that position was communicated to Phoenix.
A question arose as to which company provided primary coverage and which provided excess coverage to Kitchen as between the insurers. Phoenix initially determined that its coverage would be applied first to the claim and entered into settlement negotiations with Babcock. Babcock reduced his settlement demand to $100,000, which Phoenix considered reasonable. Then, a few days before the scheduled trial date, DiBuono, a Phoenix claims manager, determined from a reading of both policies *1050 that, as between the insurers, FFB provided primary coverage based on the respective wording of "other insurance" clauses in the insurance contracts. He communicated his position to counsel for FFB, advised him that he had offered $100,000 to Babcock in settlement and demanded that FFB assume the primary defense of the case.
Lopez, counsel provided to Kitchen by FFB, without acknowledging its primary position in regard to Phoenix, stated that the settlement offer was too high and that he was willing to assume the responsibility of the trial. DiBuono settled the case for $100,000 and obtained releases from the Babcocks for Kitchen, Phoenix and FFB. Phoenix then made demand on FFB for reimbursement of the settlement amount; FFB refused. Phoenix sued FFB seeking equitable subrogation, and the court ultimately held a nonjury trial. At the close of Phoenix's case the trial judge granted FFB's motion for involuntary dismissal and entered a written dismissal order and final judgment in favor of FFB on March 20, 1989. This timely appeal followed.
Subrogation is a cause of action in equity which is designed to afford relief to one who is required to pay a legal obligation of another. Rebozo v. Royal Indemnity Co., 369 So.2d 644 (Fla. 3d DCA), cert. denied, 379 So.2d 209 (Fla. 1979). Florida courts recognize two types of subrogation. "Conventional" subrogation depends upon a contract between the parties, and "legal" or "equitable" subrogation arises by operation of law and is determined by weighing the equities between the parties. Dixie Nat'l Bank v. Employers Commercial Union Ins. Co., 463 So.2d 1147 (Fla. 1985). Equitable subrogation is an appropriate form of relief in a dispute between a primary and excess insurer arising from the payment of a claim by the excess insurer. United States Auto. Ass'n v. Hartford Ins. Co., 468 So.2d 545 (Fla. 5th DCA), rev. denied, 476 So.2d 676 (Fla. 1985).
In this somewhat unusual case of dual primary coverage, both Phoenix and FFB owed a duty to Kitchen to defend against the Babcock claim. That duty to defend requires the insurer to investigate the facts and make a good faith offer to settle if a prudent man would do so. Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783 (Fla. 1980). Where, as in this case, a primary/excess relationship exists between two insurers, the excess insurer stands in the shoes of the insured in regard to this duty. Gen. Accident Fire and Life v. American Cas. Co., 390 So.2d 761 (Fla. 3d DCA 1980), rev. denied, 399 So.2d 1142 (Fla. 1981). In defining the duties flowing between the insurers in regard to the Babcock claim, it therefore became critical to determine which was primary and which was excess as between them. Phoenix, assuming itself to be primary, undertook the thrust of the defense including pursuing a good faith settlement. FFB on the other hand, asserted coverage defenses, provided limited participation in the defense and made no attempt to settle. This possibility of no coverage on the part of FFB necessitated that Phoenix pursue a favorable disposition of the claim even if FFB had the primary responsibility to defend.
To resolve the relationship between Phoenix and FFB it is appropriate to review their respective insurance contracts with Kitchen to determine if they contain "other insurance" clauses, and if so, if those provisions are dispositive of the issue. Sentry Ins. Co. v. Aetna Ins. Co., 450 So.2d 1233 (Fla. 2d DCA 1984). The pertinent parts of the policies read:
FFB
7. OTHER INSURANCE
The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance.
PHOENIX
OTHER INSURANCE
Coverage N [personal liability] is excess insurance over other valid and collectible insurance. This provision does *1051 not apply to other insurance written specifically as excess over this policy.
These provisions read in context with the remaining provisions of each policy clearly show FFB to be primary as between the insurers. Notwithstanding, FFB maintained that Phoenix was primary up through its first affirmative defense in this lawsuit. It then stipulated to its primary position before trial. It is also noteworthy that the coverage defenses FFB asserted against Kitchen were not carried forward into this litigation, where they would be equally applicable to Phoenix.
Lastly, FFB complains that it should not be compelled to pay a settlement amount which it deemed excessive. Perhaps FFB could have negotiated a more favorable settlement if it had exerted an effort to do so before an offer of $100,000 was on the table, effectively precluding a lesser amount. If this is true, FFB is simply the victim of its own neglect to seek out a settlement when it had acknowledged that the claim had settlement value. Any equities in favor of FFB in this regard evaporated when it stipulated in the court below that the settlement amount was reasonable.
We are therefore left with Phoenix, which undertook and fulfilled its primary duty to its insured, and FFB, which now concedes primary coverage and a reasonable settlement amount, but still declines to assume the responsibility which it had from the very beginning. Phoenix presented evidence in the lower court which established a prima facia case for equitable subrogation, and the granting of an involuntary dismissal at the close of the plaintiff's case was error. Because FFB has asserted additional affirmative defenses which are not resolved by this appeal, a new trial is required.
Reversed and remanded for a new trial.
HALL, A.C.J., and PARKER, J., concur.