This case is before this Court on two certified questions from the United States Court of Appeals for the Eleventh Circuit. As modified by this Court,[1] those questions are:
 1) Whether, absent any specific contractual duty, a primary insurance carrier owes a duty of good faith in each, or all, of the following duties to an excess carrier in its conduct of the defense of an insured who is insured by both: duty of good faith to settle; duty of good faith in deciding whether to settle; and duty of good faith to keep the excess carrier informed of settlement negotiations and adverse developments.
 2) Whether an excess carrier, whose insured was "never subject to a final judgment ordering the payment of money that [the insured] personally — and not his insurer — would have to pay,"[2] can be equitably subrogated to the rights of the insured arising out of any of the *Page 142 
foregoing duties against the primary carrier in the conduct of its defense of the mutual insured.
For the reasons given below, we answer each question in the negative.
 I. Facts
This case arises from a judgment entered on a $4.5 million jury verdict in a wrongful-death action against Pearce Construction Company, Inc. (hereinafter "Pearce"), in the Morgan Circuit Court. The case had gone to trial after the parties had failed to reach a settlement; however, there was evidence indicating that the case could have been settled before trial for $350,000. While the appeal was pending in this Court, a settlement was reached in the amount of $4.6 million — $1 million was paid by Pearce's primary insurer, Travelers Casualty and Surety Company (hereinafter "Travelers"), and the remaining $3.6 million was paid by Pearce's excess insurer, Federal Insurance Company (hereinafter "Federal").
In an attempt to recover the amounts it paid to satisfy the settlement, Federal and Pearce sued Travelers in the United States District Court for the Northern District of Alabama, alleging 1) equitable subrogation; 2) refusal to settle resulting in extracontractual damages; 3) negligent and/or wanton failure to settle; 4) assumption of duties wrongfully performed; and 5) recovery against Travelers by way of an assignment by Pearce of claims Pearce could assert against Travelers. The district court entered a summary judgment in favor of Travelers, noting that this Court has "not expressly adopted the doctrine of equitable subrogation between a primary and excess insurer" and that this Court has not decided "whether a primary insurance carrier owes a duty of good faith to an excess insurance carrier of its insured." This ruling was appealed to the United States Court of Appeals for the Eleventh Circuit, which certified the above questions to this Court.
 II. Analysis A. Duty of Good Faith Regarding Settlement
The issue whether a primary insurer owes a duty of good faith to an excess insurer regarding settlement of a claim has been raised before, but never resolved by, this Court. In Nationwide Mutual Insurance Co. v.Hall, 643 So.2d 551 (Ala. 1994), we were asked to make Alabama's tort of bad faith failure to settle a claim available to one insurer (as subrogee of its insured) against another insurer; in that case we briefly discussed but refused to address the issue now before us:
 "The third issue is whether under Alabama law an insurer, as the subrogee of its insured, may bring a claim of bad faith against another insurer. Although the circuit court concluded that sufficient evidence had been presented to establish a claim that Alfa had in bad faith failed to defend and indemnify, it held that Alabama law does not allow an insurer to bring such a claim as the subrogee of its insured.
 "Citing Fireman's Fund Ins. Co. v. Continental Ins. Co., 308 Md. 315, 519 A.2d 202 (1987); Continental Cas. Co. v. Reserve Ins. Co., 307 Minn. 5, 238 N.W.2d 862
(1976); Home Ins. Co. v. Royal Indem. Co., 68 Misc.2d 737, 327 N.Y.S.2d 745 (N.Y.Sup.Ct.), affirmed, 39 A.D.2d 678, 332 N.Y.S.2d 1003, appeal denied, 31 N.Y.2d 641, 289 N.E.2d 565, 337 N.Y.S.2d 1025 (1972), Nationwide urges this Court to follow those cases and hold that as the excess insurer and subrogee of Friedlander [the insured], it may bring a claim of bad faith against Alfa, Friedlander's primary insurer. *Page 143 
 "We recognize that a number of courts in other jurisdictions have recognized that a primary insurance carrier owes a duty of good faith to an excess insurance carrier of its insured and on that basis have allowed an excess insurer to bring a claim of bad faith against a primary insurer. Hartford Accident Indem. Co. v. Aetna Cas. Surety Co., 164 Ariz. 286, 792 P.2d 749, 752-53 nn. 2-3 (1990) (survey of jurisdictions). See generally Excess Carrier's Right to Maintain Action Against Primary Liability Insurer for Wrongful Failure to Settle Claim Against Insured, 10 A.L.R.4th 879 (1981). A few courts have even recognized a direct duty owed by a primary insurer to an excess insurer and have permitted excess insurers to bring claims of bad faith against primary insurers without being limited to asserting rights as subrogees of their insureds. E.g., Hartford Accident Indem. Co. v. Michigan Mut. Ins. Co., 93 A.D.2d 337, 462 N.Y.S.2d 175 (1983), affirmed, 61 N.Y.2d 569, 463 N.E.2d 608, 475 N.Y.S.2d 267 (1984); Estate of Penn v. Amalgamated General Agencies, 148 N.J. Super. 419, 424, 372 A.2d 1124, 1127 (1977). See generally Annotation, Liability Insurance: Excess Carrier's Right of Action Against Primary Carrier for Improper or Inadequate Defense of Claim, 49 A.L.R.4th 304 (1986).
 "One factual premise of this cause of action, however, is that the insurer bringing the claim is an excess insurer of the insured. Because Nationwide's insurance is primary, and not excess, we do not address the merits of this issue."
Hall, 643 So.2d at 562-63.
The issue now squarely before us, we hold that, in the absence of contrary contractual obligations, a primary insurer owes no duty of good faith to an excess insurer with respect to the settlement of a lawsuit against an insured. The reasons which undergird Alabama's tort of bad faith, currently available to insureds against their insurers, seeChavers v. National Security Fire Casualty Co., 405 So.2d 1 (Ala. 1981), are simply not present in the primary-insurer/excess-insurer scenario where, as here, contractual duties with regard to settlement of a claim are absent.
In a typical insurance contract, the insured expressly relinquishes to the insurer the right to control the defense and settlement of any action arising under the contract. The insured's reliance on the abilities and the good faith of the insurer is therefore necessarily at a maximum. In this case, not only did Federal not in any way expressly relinquish that right to Travelers, Federal's policy expressly reserved to Federal "[t]he right to participate in the investigation, settlement or defense of any claim or suit that we feel may create liability on our part under the terms of the policy."
Furthermore, there is a difference in bargaining power between an insurer and an insured in drafting and negotiating the insurance contract. The contract shifts financial risk from the insured, with minimal litigation experience, to the insurer, with substantial litigation experience. However, in the absence of separate contractual duties, the primary and excess insurance carriers stand on more equal footing. Obviously, without a contract between the insurance carriers, there can be no lack of equality in contract negotiations. Each has the responsibility to draft its own insurance contract. Each is assumed to have litigation experience. Without a contract, there can be no contractual shifting of financial risk. Simply put, the primary-insurer/excess-insurer relationship does not involve the same policy considerations that justify imposing on those insurers the *Page 144 
duty of good faith to settle that currently exists between an insured and his insurer. Therefore, we answer the first question in the negative.
 B. Equitable Subrogation
As to the second certified question, Federal argues that even if Alabama law does not recognize a direct duty of good faith with regard to settlement owed to an excess insurer by a primary insurer, Federal should be able to sue as Pearce's subrogee on a claim for bad faith failure to settle. The doctrine of equitable subrogation has long been recognized in Alabama, and can be applied in various situations:
 "[American Cyanamid] rests its theory of subrogation on the principles enunciated in American Southern Insurance Co. v. Dime Taxi Service, Inc., 275 Ala. 51, 151 So.2d 783 (1963). Dime Taxi involved the liability of a taxi company for damages sustained by a passenger in an accident caused by the negligence of the taxi company's driver. The taxi company was liable because of the negligence of its driver, and the Court allowed the employer to be subrogated to the rights of the injured party against the driver, its own employee, and the driver's insurer. 275 Ala. at 56, 151 So.2d at 786.
 "While Dime Taxi's theory of subrogation is limited, of course, to the factual context of that case — a master/servant relation — we cannot so limit the rule's application. The Dime Taxi principle of subrogation is equally applicable here. When one, under a claim of right, discharges an obligation for which another should be held legally liable for payment, then the former stands in the shoes of the obligor and may seek reimbursement against the latter for the damages caused by its allegedly culpable conduct."
American Cyanamid Co. v. United States Fid. Guar. Co., 459 So.2d 851,853-54 (Ala. 1984) (emphasis added). Under this rule, an excess insurer, which pays an obligation incurred by its insured, could be equitably subrogated to the rights of its insured in order to seek reimbursement from some third-party wrongdoer.
However, when equitable subrogation is sought to assert a bad-faith-failure-to-settle claim in a primary-insurer/ excess-insurer scenario, like the one involved here, a unique analysis must be undertaken. It is well-settled that an insurer that, through subrogation, "stands in the shoes" of its insured may assert only claims that would be validly asserted by the insured. See Allstate Ins. Co. v.Amerisure Ins. Cos., 603 So.2d 961, 966 (Ala. 1992) ("Because Sherrill could not recover from Allstate any payments that he might make voluntarily, neither can Amerisure [who sought to be subrogated to the rights of Sherrill]."). And, as we stated in Evans v. Mutual Assurance,Inc., 727 So.2d 66 (Ala. 1999), it is also well-settled that a bad-faith-failure-to-settle claim does not exist where the insured is subject to no personal loss from a final judgment:
 "Dr. Evans claims that, given Mutual Assurance's knowledge of the risk of a large judgment, and its knowledge of the deleterious effect the malpractice action was having on him, Mutual Assurance should have settled the case before trial for the $1 million policy limits. Dr. Evans contends that even though Mutual Assurance fully paid the claim against him, he is still entitled to damages from Mutual Assurance for emotional distress, humiliation, damage to his reputation, and loss of business, all of which he says resulted from Mutual Assurance's insistence that the malpractice claim be tried before the Mobile jury. *Page 145 
 "In Waters v. American Cas. Co. of Reading, Pa., 261 Ala. 252, 73 So.2d 524 (1953), this Court recognized that if an insurer negligently failed to settle a case, the insurer should be liable for the full amount of any judgment, including any excess over the policy limits. This Court has on several occasions addressed the tort of negligent or bad-faith failure to settle. Each time, the Court has held that a cause of action arising out of a failure to settle a third-party claim made against the insured does not accrue unless and until the claimant obtains a final judgment in excess of the policy limits. See State Farm Mut. Auto. Ins. Co. v. Hollis, 554 So.2d 387
(Ala. 1989); Turner Ins. Agency v. Continental Cas. Ins. Co., 541 So.2d 471 (Ala. 1989); Hartford Accident Indem. Co. v. Cosby, 277 Ala. 596, 173 So.2d 585
(1965). See also Boyd Bros. Transp. Co. v. Fireman's Fund Ins., 540 F. Supp. 579, 582 (M.D.Ala. 1982) (there is no injury from a failure to settle until there is a final judgment against the insured), aff'd, 729 F.2d 1407 (11th Cir. 1984).
 "Relying on a number of cases, Dr. Evans argues that a cause of action based on an insurer's bad-faith failure to settle a claim should be held to accrue at the time the insurer first exhibits a bad-faith failure to settle. See Safeco Ins. Co. of America v. Sims, 435 So.2d 1219, 1222 (Ala. 1983); Chavers v. National Sec. Fire Cas. Co., 456 So.2d 293, 294
(Ala. 1984); McLeod v. Life of the South Ins. Co., 703 So.2d 362, 364-65 (Ala.Civ.App. 1996). Each of those cases, however, involved a first-party claim wherein the insured alleged that the insurer had, in bad faith, refused to pay a legitimate claim made by the insured on his own policy. Those cases hold that the cause of action accrues the moment the insurer refuses, in bad faith, to honor the claim, and that the insurer cannot absolve itself of liability by subsequently tendering payment.
 "We find no basis for substituting the accrual rule applicable in first-party cases for the established accrual rule applicable in causes of action based on an insurer's failure to settle third-party claims against its insured. It is clear from Dr. Evans's complaint that he was never subject to a final judgment ordering the payment of money that Dr. Evans personally — and not his insurer — would have to pay, and that Mutual Assurance's paying the settlement absolved Dr. Evans of any personal liability. The circuit court properly entered the judgment on the pleadings."[3]
727 So.2d at 67-68 (emphasis added).
Applying these principles to the primary-insurer/excess-insurer scenario leads us to conclude that, because an insured will never be able to assert a bad-faith-failure-to-settle claim against an insurer where the insured is "never subject to a final judgment ordering the payment of money that [the insured] personally — and not his insurer — would have to pay," equitable subrogation is not available to an excess insurer whose insured is subject to no such final judgment. Simply put, equitable subrogation cannot exist to provide a conduit to assert what are conclusively *Page 146 
nonexistent rights. Therefore, we answer the second question in the negative.
QUESTIONS ANSWERED.
Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
Moore, C.J., recuses himself.
[1] Our modification of the certified questions is in accordance with both the leeway given by the United States Court of Appeals for the Eleventh Circuit, see Federal Insurance Co. v. Traveler's Casualty Surety Co., 280 F.3d 1356, 1357 (11th Cir. 2002) ("The particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the issues in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given."), and our desire to view the questions in their relevant context. See Palmore v. First Unum, [Ms. 1010802, June 28, 2002]841 So.2d 233 (Ala. 2002). The certified questions, as phrased by the Eleventh Circuit, were as follows:
 "1) Whether a primary insurance carrier owes a duty of good faith in each, or all, of the following duties to an excess carrier in its conduct of the defense of an insured who is insured by both. The relevant duties are: duty of good faith to settle; duty of good faith in deciding whether to settle; duty of good faith to keep excess carrier informed of settlement negotiations and adverse defense developments.
 "2) Whether an excess insurer can be equitably subrogated to the rights of an insured arising out of any of the foregoing duties against the primary carrier in the conduct of its defense of the mutual insured."
[2] Evans v. Mutual Assurance, Inc., 727 So.2d 66, 68 (Ala. 1999).
[3] Federal asserts that Alabama Farm Bureau Mutual Casualty InsuranceCo. v. Dalrymple, 270 Ala. 119, 116 So.2d 924 (1959), allows an insured to bring a bad-faith-failure-to-settle claim even where the insured would not be subject to paying an amount greater than his amount of insurance. In this respect, Federal misreads the effect of Dalrymple, in which this Court merely held that an insured need not prepay a judgment before asserting a claim of bad faith failure to settle. See Dalrymple,270 Ala. at 122-23, 116 So.2d at 925-26.