AUTO–OWNERS INS. CO., Plaintiff,

v.

AMERICAN YACHTS, LTD.,
et al., Defendants.

No. 06–80073–CIV.

United States District Court,
S.D. Florida.

June 21, 2007.

Lysa Michelle Friedlieb, William David Zoeller, Sellars Marion & Bachi, West Palm Beach, FL, for Plaintiff.

David Lee Ross, Mark Allan Salky, Sabrina G. Ferris, Greenberg Traurig, Miami, FL, for Defendants.

*ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DEFENDANTS' AFFIRMATIVE DEFENSES*

HURLEY, District Judge.

**THIS CAUSE** is before the court upon the defendants' motion for summary judgment and the plaintiff's motion for partial summary judgment regarding defendants' affirmative defenses. For the reasons expressed herein, the court will grant the defendants' motion for summary judgment and deny as moot the plaintiff's motion for partial summary judgment regarding the defendants' affirmative defenses.

## BACKGROUND

This is a bad faith failure to settle action instituted by an excess insurance carrier against a primary insurance carrier and arising out of a boating accident involving the parties' mutual insured.

Plaintiff Auto–Owners Insurance Company ("Auto–Owners") is an insurance provider. It provided excess liability insurance coverage to the parties' mutual insured, Keith Ragon, in the amount of $1 million.

Defendants Continental Insurance Company ("Continental") and American Yachts, Ltd. ("AYL") are also insurance providers. They provided primary liability insurance coverage to Ragon in the amount of $500,000.

In May 2002, Ragon was involved in a boating accident with Charles and Pamela Whorl and in which Charles Whorl sustained injuries. The Whorls subsequently retained counsel to represent them in any action related to the boating accident and Mr. Whorl's injuries. In addition, Ragon informed his primary insurance carrier, the defendants in this case, of the potential claim, and the defendants retained counsel to defend Ragon.[1]

In February 2003, prior to filing suit, the Whorls' counsel demanded the defendants' policy limits of $500,000. The defendants, however, rejected this offer to settle. Thereupon, the Whorls filed suit against Ragon. In July 2003, the Whorls served a second proposal to settle for the defendants' policy limits of $500,000. Again, the defendants rejected the offer. Ultimately, the underlying litigation settled on the eve of trial with the defendants paying their full $500,000 policy limits and the plaintiff excess carrier contributing $400,000 of its $1 million policy towards the settlement.

In connection with the settlement, the Whorls executed a release, dated March 3, 2005, in which they released Ragon, Auto–Owners, Continental, and AYL from any liability they may have had regarding the May 2002 boating accident. The release specifically covered the claims presented by the Whorls in the underlying litigation. The parties subsequently filed a joint stipulation of dismissal with prejudice in the underlying litigation, and the trial court dismissed the underlying action with prejudice. Significantly, the parties' settlement agreement did not preserve any right of action against the primary insurer. In fact, the underlying action was extinguished and no excess judgment was ever

---

1. The defendants allege that the Whorls' counsel was not informed of any excess liability insurance coverage until August 2004.

entered in the underlying litigation against Ragon.

The plaintiff excess carrier then instituted this lawsuit against the defendants primary insurers. The complaint contains one count for bad faith failure to settle / breach of fiduciary duty under the common law of Florida.[2] The gravamen of the plaintiff's complaint is that the defendants' failure to accept multiple offers to settle for policy limits was in bad faith and exposed the plaintiff to excess liability. As a result, the plaintiff seeks the $400,000 it contributed towards the settlement plus pre-judgment interest, costs, and attorney fees.[3]

### JURISDICTION

This court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is the requisite diversity of citizenship between the plaintiff and the defendants. Moreover, the amount in controversy exceeds $75,000.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida.

### DISCUSSION

#### A. Standard of Review for Summary Judgment

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of meeting this exacting standard. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could find in his favor. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

2. There has been no attempt to assert a cause of action pursuant to Fla. Stat. § 624.155(1)(b); rather, the complaint expressly references the common law of Florida.

3. In July 2006, over a year after the execution of the release, Ragon executed a document entitled "Settlement Agreement and Assignment of Rights," in which he purported to assign to Auto–Owners his right to sue Continental for bad faith failure to settle during the course of the underlying litigation.

The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "If the non-moving party fails to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof, then the court must enter summary judgment for the moving party." *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998).

### B. Merits of Defendants' Motion for Summary Judgment

The defendants contend that summary judgment should be granted in their favor on the basis of two independent legal theories. First, the defendants argue that the entry of an excess judgment is a necessary prerequisite to a bad faith failure to settle claim, and that because the underlying litigation settled and no judgment was ever entered, the plaintiff cannot maintain the instant bad faith action. Second, the defendants contend that at no point in the underlying litigation did they miss an opportunity to settle which would have put them in a bad faith posture relative to the parties' mutual insured, Mr. Ragon, or to the plaintiff.

#### 1. The Requirement of an Excess Judgment Under Florida Bad Faith Law

■ The parties agree that Florida law controls the disposition of this case. *See LaFarge Corp. v. Travelers Indemnity Co.*, 118 F.3d 1511, 1515 (11th Cir.1997) (citing *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Under Florida law, an insurer has a duty to act in good faith and with due regard for the interests of its insured. *See*

*Boston Old Colony Ins. Co. v. Gutierrez*, 386 So.2d 783, 785 (Fla.1980); *see also* Fla. Stat. § 624.155(b)(1). In particular, the Supreme Court of Florida has explained:

> An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

*Gutierrez*, 386 So.2d at 785 (citations omitted); *see also Allstate Indem. Co. v. Ruiz*, 899 So.2d 1121, 1125 (Fla.2005) ("Under liability policies ... insurance companies took on the obligation of defending the insured, which, in turn, made insureds dependent on the acts of the insurers.... This placed insurers in a fiduciary relationship with their insureds ... [and] courts began to recognize that insurers 'owed a duty to their insureds to refrain from acting solely on the basis of their own interests in settlement.'") (quoting *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So.2d 55 (Fla.1995)); *Fidelity and Cas. Co. of New York v. Cope*, 462 So.2d 459, 460

(Fla.1985) ("The essence of a 'bad faith' insurance suit (whether it is brought by the insured or by the injured party standing in his place), is that the insurer breached its duty to its insured by failing to properly or promptly defend the claim (which may encompass its failure to make a good faith offer of settlement within the policy limits)—all of which results in the insured being exposed to an excess judgment.") (quoting *Kelly v. Williams*, 411 So.2d 902, 904 (Fla. 5th DCA 1982)).

Since the Florida Supreme Court's decision in *Auto Mutual Indemnity Company v. Shaw*, 134 Fla. 815, 184 So. 852, 859 (1938), which recognized a common law cause of action for third-party bad faith, insurance bad faith law has evolved through numerous judicial decisions and legislative enactments. For example, at common law, the cause of action for bad faith arose only in the third-party context, and did not extend to first-party actions by an insured against its own insurer for failing to act in good faith when settling a claim. *See Talat Enters., Inc. v. Aetna Cas. & Sur. Co.*, 753 So.2d 1278, 1281 (Fla.2000). As the Florida Supreme Court previously stated, "Florida courts had refused to recognize the tort of first-party bad faith because the type of fiduciary duty that exists in third-party actions is not present in first-party actions and the insurer is not exposing the insured to excess liability." *Laforet*, 658 So.2d at 59. It was not until 1982 that the Florida legislature modified the common law, effectively creating a statutory cause of action for first-party bad faith, and also codified earlier Florida court decisions authorizing third-party bad faith claims. *See* Fla. Stat. § 624.155(b).

In addition, Florida law now recognizes that an excess insurer may, under certain circumstances, maintain a common law bad faith action against a primary insurer. Under the doctrine of equitable subrogation, an excess insurer has the right to maintain a cause of action for damages resulting from the primary insurer's bad faith failure to settle the claim against their common insured. *See Ranger Ins. Co. v. Travelers Indem. Co.*, 389 So.2d 272, 275 (Fla. 1st DCA 1980); *see also Phoenix Ins. Co. v. Florida Farm Bureau Mut. Ins. Co.*, 558 So.2d 1048, 1050 (Fla. 2d DCA 1990); *General Acc. Fire & Life Assur. Corp., Ltd. v. American Cas. Co. of Reading, Pa.*, 390 So.2d 761, 765 (Fla. 3d DCA 1980) ("Equitable subrogation principles permit the excess carrier to proceed against the primary carrier when the primary carrier's bad faith refusal to negotiate a settlement has caused the excess carrier to become liable for an excess judgment."). More specifically, "subrogation" is the substitution of one person in the place of another with reference to a lawful claim or right. *See Ranger*, 389 So.2d at 274. As one court has observed:

> When there is no excess insurer, the insured becomes his own excess insurer, and his single primary insurer owes him a duty of good faith in protecting him from an excess judgment and personal liability. If the insured purchases excess coverage, he in effect substitutes an excess insurer for himself. It follows that the excess insurer should assume the rights as well as the obligations of the insured in that position.

*Id.* at 275. In effect, the excess insurer "stands in the shoes" of the insured and succeeds to the rights and responsibilities that the insured would normally have against the primary insurer. *See Phoenix*, 558 So.2d at 1050; *see also Ranger*, 389 So.2d at 275 ("Under the doctrine of equitable subrogation, the duty owed an excess insurer is identical to that owed the in-

sured.") (quoting *Peter v. Travelers Ins.*, 375 F.Supp. 1347 (C.D.Cal.1974)).

 It is against this jurisprudential backdrop that the court must evaluate the claims presented by the defendants in the instant case. Seizing on language in various Florida Supreme Court cases, the defendants argue that the entry of an excess judgment in the underlying litigation is an essential element of a third-party bad faith claim. *See, e.g., Cunningham v. Standard Guaranty Ins. Co.*, 630 So.2d 179, 181 (Fla.1994) ("Under ordinary circumstances, a third party must obtain a judgment against the insured in excess of the policy limits before prosecuting a bad faith claim against the insured's liability carrier."); *Cope*, 462 So.2d at 460 (bad faith claim requires that insured be "exposed to an excess judgment"); *Thompson v. Commercial Union Ins. Co. of New York*, 250 So.2d 259, 260–61 (Fla.1971) ("It is established in Florida that an insured has the right to sue and recover damages against his own insurer for an excess judgment on the basis of fraud or bad faith in the conduct of the insured's defense by the insurer."). There are, however, several recognized exceptions to the general rule that an excess judgment must be entered before a third-party bad faith claim is made actionable. For example, in *Cunningham*, the Florida Supreme Court dispensed with the requirement of an excess judgment because the parties agreed to try the bad faith claim before the underlying negligence claim, and the court found that the parties' stipulation to this effect was the "functional equivalent of an excess judgment." *Cunningham*, 630 So.2d at 180, 182. Similarly, if the insurer completely refuses to defend the insured in the underlying litigation and the insured is forced to undertake his own defense and then settles the case, the insured can sue for reimbursements regardless of whether an excess judgment has been entered. *See North American Van Lines, Inc. v. Lexington Ins. Co.*, 678 So.2d 1325, 1333 (Fla. 4th DCA 1996). These various exceptions make it clear that the lack of an excess judgment in the underlying litigation does not necessarily bar a subsequent bad faith claim.[4]

The Florida Supreme Court has, however, outlined circumstances in which a subsequent bad faith claim will be barred. In *Cope*, the court considered a case where Mr. Daniel Brosnan caused personal injuries while driving a car owned by Ms. Jacqueline Gehan. *See Cope*, 462 So.2d at 459. Both Mr. Brosnan and Ms. Gehan were insured under policies with $10,000 limits. *Id.* at 459–60. The case proceeded to trial and a $100,000 final judgment was entered in favor of the injured party. *Id.* at 460. The injured party then instituted a bad faith action against Ms. Gehan's insurance company. *Id.* That litigation settled, with Ms. Gehan's insurance company paying $50,000 of the $80,000 excess judgment. *Id.* In connection with the set-

---

4. The parties contest the applicability and persuasive value of the Florida Fourth District Court of Appeal case of *RLI Ins. Co. v. Scottsdale Ins. Co.*, 691 So.2d 1095 (Fla. 4th DCA 1997). In that case, the court considered a factual scenario similar to the case at bar. *Id.* at 1096. After recognizing that, in Florida, an excess insurer may sue a primary insurer for bad faith under a theory of equitable subrogation, the court stated that an excess judgment is not an absolute prerequisite to a common law bad faith action between an excess and a primary insurer. *Id.* The court did not, however, proceed to consider the legal question confronted by this court; namely, under what circumstances a bad faith action between an excess and a primary insurer will be barred. Instead, the court found in favor of the primary insurer on a different legal theory, holding that the undisputed facts demonstrated that the primary insurer did not miss an opportunity to settle which would have put it in a bad faith posture. *Id.*

tlement, the injured party released the insured tortfeasor from all liability, including liability in excess of the policy limits. *Id.* Next, the injured party filed a bad faith suit against Mr. Brosnan's insurance company to recover the remaining $30,000 of the excess judgment. *Id.*

The Florida Supreme Court held that the injured party's claim for bad faith against Mr. Brosnan's insurance company was barred by the release and satisfaction of judgment executed in the initial bad faith case. *Id.* at 459, 461. ("[A]bsent a prior assignment of the [bad faith] cause of action, once an injured party has released the tortfeasor from all liability, or has satisfied the underlying judgment, no such [bad faith] action may be maintained."). The court noted that the injured party's bad faith claim was derivative of Mr. Brosnan's (the insured's) claim against his insurance company. *Id.* Because the underlying judgment had been satisfied and Mr. Brosnan had been released from all liability, Mr. Brosnan no longer had a cause of action for bad faith against his insurance company. *Id.* Therefore, the court held that, absent an assignment of the bad faith cause of action prior to the judgment's satisfaction, the injured party could not maintain a cause of action for bad faith either. *Id.*

The Florida Supreme Court later clarified that the key to *Cope's* applicability is whether the "underlying claim" continues to exist after the execution of the settlement agreement; that is, if the underlying claim has been completely extinguished by the settlement, and there has been no assignment of the bad faith claim prior to execution of the settlement documents, then the bad faith claim will also be extinguished. *See Cunningham*, 630 So.2d at 180. The case law draws a distinction between a full release, which serves to extinguish the underlying tort claim, and other types of settlement documents,

which may not. *See Rosen v. Florida Ins. Guar. Ass'n*, 802 So.2d 291, 295 (Fla.2001). In particular, a "release" is an outright cancellation or discharge of the entire obligation as to one or all of the alleged joint wrongdoers. *Id.* In contrast, a "covenant not to sue" recognizes that the obligation or liability continues but the injured party agrees not to assert any rights grounded thereon against a particular covenantee. *Id.* A covenant not to sue is an example of a document executed in connection with a settlement that would not serve to extinguish the underlying tort claim. *Id.*

In the case at bar, the parties entered into a settlement agreement in lieu of a trial on the complaint in the underlying litigation. The settlement agreement provided that the defendants would pay their full $500,000 policy limits and the plaintiff would contribute $400,000 of its $1 million excess policy. In connection with the settlement, a release was executed, in which the Whorls, the injured parties, fully discharged Ragon, the insured, and the various insurance companies from any and all liability in connection with the boating accident. No excess judgment was entered in the underlying litigation, and the trial court ultimately dismissed the underlying action with prejudice.

The legal effect of these various documents is that the underlying tort claim no longer exists. Stated another way, the settlement agreement and the release ensure that there is no possibility that Ragon, the insured, will be exposed to an excess judgment. Florida case law makes it abundantly clear that an excess insurer's bad faith claim against a primary insurer is derivative of the insured's bad faith claim against the primary insurer. Here, because Ragon was released from all liability, and there is no longer even the potential for his exposure to an excess judgment, he could not institute a bad faith claim against his primary insurers. As a

result, the excess insurer, who stands in Ragon's shoes, cannot pursue a claim for bad faith either.[5] As a result, the court must grant the defendants' motion for summary judgment.[6]

### 2. Whether the Defendants Missed an Opportunity to Settle Which Would Have Put Them in a Bad Faith Posture

Alternatively, the defendants argue that at no point in the underlying litigation did they miss an opportunity to settle which would have put them in a bad faith posture relative to the parties' mutual insured or to the plaintiff. In light of the court's conclusion above, this issue need not be addressed.

### C. Merits of the Plaintiff's Partial Motion for Summary Judgment Regarding the Defendant's Affirmative Defenses

The plaintiff seeks to strike the defendants' affirmative defenses of comparative bad faith and unclean hands because the plaintiff contends that these defenses are not available under Florida law. Again, in light of the court's decision to grant the defendant's motion for summary judgment, the court need not reach these issues, and will deny as moot the plaintiff's partial motion for summary judgment regarding the defendants' affirmative defenses.

### CONCLUSION

For these reasons, it is hereby **OR-DERED** and **ADJUDGED** that:

1. The defendants' motion for summary judgment [DE # 62] is **GRANTED**.

2. The plaintiff's motion for partial summary judgment regarding the defendants' affirmative defenses [DE # 65] is **DENIED** as moot.

3. Pursuant to Fed.R.Civ.P. 58, the court will enter final judgment by separate order.

4. There being nothing further to resolve at this time, the Clerk of the Court is directed to **CLOSE** this case and to **DENY** all pending motions not otherwise ruled upon as moot.

---

5. Moreover, the assignment of rights executed by Ragon over a year after the release was executed in the underlying action has no effect on this analysis, as Ragon had no cause of action to assign at that point. *See, e.g., Nova Information Systems, Inc. v. Greenwich Ins. Co.,* 365 F.3d 996, 1004 (11th Cir.2004) (under Florida law, an assignee acquires no greater rights than those possessed by the assignor himself).

6. The court's conclusion is supported by cases from the Eleventh Circuit and other jurisdictions. *See, e.g., Evanston Ins. Co. v. Stonewall Surplus Lines Ins. Co.,* 111 F.3d 852, 859–860 (11th Cir.1997); *Twin City Fire Ins. Co. v. Country Mut. Ins. Co.,* 23 F.3d 1175, 1178–81 (7th Cir.1994); *Federal Ins. Co. v. Travelers Cas. and Sur. Co.,* 843 So.2d 140, 143–44 (Ala.2002); *RLI Ins. Co. v. CNA Cas. of Cal.,* 141 Cal.App.4th 75, 45 Cal.Rptr.3d 667, 672

(2006). The court recognizes that a debate exists on this issue, with a few commentators even advocating in favor of finding that a direct duty of good faith exists between an excess insurer and a primary insurer. The court, however, is constrained by the law as it exists in the state of Florida, where is clear that an excess insurer may sue a primary insurer for bad faith only under the principle of equitable subrogation. As the Seventh Circuit has opined:

> Should courts strain to create novel tort duties on behalf of insurance companies? Do insurance companies need the protection of tort law against their own insureds and other insurance companies? We need not answer these questions. It is enough that the arguments in favor of the direct duty are not so compelling...

*Twin City,* 23 F.3d at 1180.