[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 28, 2008
THOMAS K. KAHN
CLERK

_____

Nos. 07-13332 & 08-10019
Non-Argument Calendar

_____

D. C. Docket No. 06-80073-CV-DTKH

AUTO-OWNERS INSURANCE,
a foreign corporation,

Plaintiff-Appellant,

versus

AMERICAN YACHTS LTD.,
a foreign corporation,
CONTINENTAL INSURANCE COMPANY,
a foreign corporation,

Defendants-Appellees,

BOAT/US, INC.
a foreign corporation,
a.k.a. Boat America Corporation,
d.b.a. Boatus,

Defendant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

**(March 28, 2008)**

Before TJOFLAT, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Auto-Owners Insurance Company, an excess insurance carrier, appeals from an adverse summary judgment in its lawsuit against Continental Insurance Company and American Yachts, Ltd. for their bad faith refusal to settle a tort claim against their mutual insured for the limits of the primary insurance policy.

Continental and American both provided primary liability coverage to Keith Ragon in the amount of $500,000. Auto-Owners provided excess liability coverage to Ragon in the amount of $1 million. Ragon was sued in tort as a result of a boat accident and demand was made against him for the policy limits contained in the American and Continental primary insurance policies. American and Continental twice rejected the proposals to settle for the policy limits of $500,000. Thereafter, Auto-Owners was notified of the lawsuit and participated in the settlement negotiations.

Ultimately, the underlying litigation was settled on the eve of trial with

American and Continental paying their full policy limits of $500,000 and Auto-Owners contributing $400,000 of its $1 million policy towards the settlement. The underlying plaintiffs signed a release specifically covering the claims presented in the underlying litigation releasing Ragon, American, Continental, and Auto-Owners from any further liability. Thus, the underlying action was extinguished and no excess judgment was ever entered in the underlying litigation against Ragon.

The essence of Auto-Owners' complaint is that the failure of Continental and American to accept the multiple offers to settle the underlying lawsuit for the policy limits of the primary coverage was bad faith and exposed Auto-Owners to excess liability. The district court held that because the underlying tort claim no longer existed, due to the release and the settlement agreement, no bad faith claim could be maintained by Ragon against his primary insurers. As a result, the excess insurer, who would have to be equitably subrogated to stand in Ragon's shoes to bring a claim of bad faith against the primary insurers, cannot pursue a claim of bad faith either.

We find no error in the district court's ruling that because Ragon's bad faith claim against American or Continental was extinguished by the release agreement, Auto-Owners' suit is barred under Florida law. See Fidelity and Cas. Co. of New

3

York v. Cope, 462 So. 2d 459, 459 (Fla. 1985) ("[A]bsent a prior assignment of the cause of action, once an injured party has released the tortfeasor from all liability, or has satisfied the underlying judgment, no such action may be maintained."). Because Ragon can not be "exposed to any loss or damage from the alleged bad faith of [American or Continental], no cause of action for bad faith remain[s] for anyone." Id. at 460; see also Evanston Ins. Co. v. Stonewall Surplus Lines Ins. Co., 111 F.3d 852, 858–861 (11th Cir. 1997) (because excess insurer's rights were derivative from insured's rights, where insured could not successfully assert claim, neither could excess insurer).

The judgment of the district court is

**AFFIRMED.**