[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 30, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12274

_____

D. C. Docket No. 06-21707-CV-PCH

FEDERAL INSURANCE COMPANY,

Plaintiff-Appellee,

versus

NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, P.A.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 30, 2008)**

Before BIRCH and MARCUS, Circuit Judges, and FORRESTER,* District Judge.

BIRCH, Circuit Judge:

_____

*Honorable J. Owen Forrester, United States District Judge for the Northern District of
Georgia, sitting by designation.

National Union Fire Insurance Company ("National") appeals the district court's denial of summary judgment on the common law bad faith claims of Federal Insurance Company ("Federal"). Federal, an excess insurer, sued National, a lower-level insurer, for National's alleged bad faith failure to timely settle claims arising out of an automobile collision. Federal seeks to recover the $4.5 million it paid to the collision victims approximately a year and a half before the case settled. National moved for summary judgment on the grounds that: (1) no cause of action for third-party bad faith existed because no excess judgment was ever entered, and (2) Federal could not be exposed to an excess judgment in the future because the injured parties had released their common insured of all liability and the underlying judgment had been satisfied by settlement.

The district court denied National's motion for summary judgment, ruling that an excess judgment was not a prerequisite for a viable bad faith claim under the circumstances. We conclude that Federal's right to bring a bad faith action against National was extinguished by the settlement which released their common insured and satisfied the underlying judgment. Because Federal has no cause of action as a matter of law, National is entitled to summary judgment. Accordingly, we REVERSE the district court's judgment and REMAND the case for further proceedings consistent with this opinion.

# I. BACKGROUND

In December of 2000, Edwin Mejia was severely injured when his car was rear-ended by a government truck driven by Daniel Webb.[1] Webb had been hired by David's Used Cars, which had been hired by Manheim Auctions Government Services ("Manheim"). Manheim, the common insured, had several layers of insurance. The relevant insurers in this case were National, which provided an umbrella policy of $25 million, and Federal, which provided an excess policy of $25 million.[2] National settled for $2.1 million the derivative claims of Mejia and his daughter, Nelly, who was also in the car, and a wrongful death claim of Mejia's wife, who died at the accident scene.[3] The remaining claims were Edwin and Nelly Mejia's direct claims for their damages.

The Mejias sent two settlement demands to Manheim. In September of 2001, the Mejias demanded $35 million for Edwin's damages and approximately $10 million for Nelly's damages. In May of 2003, after the trial court ruled that Manheim was vicariously liable as a matter of law for Webb's actions, the Mejias

---

[1]The facts material to resolution of this case are undisputed by the parties and are set forth in the district court's order denying National's motion for summary judgment.

[2]American Home Insurance Company provided the first layer of coverage but promptly paid its $1 million policy limit. Therefore, the district court treated National as the primary insurer and Federal as the excess insurer.

[3]A third party injured in the accident settled her claims for $30,000 with the insurer for David's Used Cars.

3

offered to settle the case within National's policy limits, asking $17.5 million for Edwin and $3.75 million for Nelly. National rejected both offers.

In April of 2004, a jury found in favor of the Mejias. The trial court entered judgment against Manheim for $21,048,561.26. The court subsequently increased by $9.9 million the award of non-economic damages, bringing the potential judgment to nearly $31 million. Manheim elected a new trial on the non-economic damages in lieu of accepting the additur award, and appealed from the judgment entered against it.

Federal believed that a second trial on the non-economic damages would likely result in a total judgment exceeding the policy limits of both National and Federal. Federal's belief was based in part on an affidavit submitted after the trial by the jury foreperson stating that the jury meant to award Edwin Mejia $1 million for each of his remaining forty years of life expectancy, rather than only $1 million for total future pain and suffering as shown on the verdict form. In addition, Federal thought the chances of Manheim prevailing on appeal were slim. Federal was thus greatly concerned by National's failure to settle the claim within National's policy limits despite Federal's repeated requests to do so.

Consequently, in October of 2004, Federal and the Mejias signed an "Agreement To Compromise Excess Coverage." R1-41, Exh. 21. The agreement,

4

undisclosed to National at the time, provided that Federal would pay the Mejias $4.5 million.[4] In exchange, the Mejias agreed not to enforce any judgment arising out of the car accident against Manheim, Federal, and another excess carrier above Federal. The agreement did not release National, however, from any liability. Instead, the agreement specifically reserved to the Mejias the right to collect from National any amounts within and above National's policy limits resulting from a judgment in the tort litigation or any claims of bad faith or other legal theories. Furthermore, the agreement emphasized that it was not a set off to the judgment as it stood then, or any judgment in the future, which was to be collected from National.

In February of 2006, the Florida Third District Court of Appeals affirmed the trial court's rulings in all material respects. Instead of proceeding with a second trial on the non-economic damages, National settled the case in May of 2006 with the Mejias for $22,433,079, the remaining balance of National's policy limits after deducting litigation expenses. In exchange, the Mejias signed a "Release and Settlement Agreement" in which they agreed to "acquit, release and forever discharge" Manheim, Webb, National, Federal, and other related parties "from any and all past, present, or future claims of action . . . arising from the

---

[4]Although Federal and National dispute whether their common insured, Manheim, knew about this agreement, Federal does not allege that National knew about it.

5

accident" underlying the litigation between the Mejias and Manheim. R1-41, Exh. 19 at 1-3. The Mejias also agreed to file a voluntary dismissal with prejudice in the underlying case. Id. at 5.

Federal then demanded that National reimburse the $4.5 million Federal had paid to the Mejias under its 2004 agreement. National refused. Federal sued based on theories of common law bad faith and equitable subrogation, alleging that National acted in bad faith when it failed to settle the claims at an earlier stage within National's policy limits. National moved for summary judgment on grounds that Federal was barred from bringing a bad faith claim as a matter of law because there was no judgment or settlement in excess of National's policy limits. In addition, National argued that any cause of action for third-party bad faith no longer existed because National's settlement with the Mejias had satisfied the underlying judgment and released Manheim from all liability. After analyzing existing Florida law, the district court concluded that "Federal is not precluded from maintaining a bad faith claim against National simply because no excess judgment was rendered or because Federal failed to obtain a full release of all liability" when it made its 2004 agreement with the Mejias. R3-113 at 17-18. The district court therefore denied summary judgment. This appeal followed.

## II. DISCUSSION

We review the district court's denial of summary judgment de novo. Holloman v. Mail-Well Corp., 443 F.3d 832, 836 (11th Cir. 2006). Summary judgment is appropriate where the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. See Federal Rule of Civil Procedure 56(c).

It is well settled under Florida law that an insurer owes an insured a good faith duty to "'settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.'" Macola v. Government Employees Ins. Co., 953 So. 2d 451, 455 (Fla. 2006) (quoting Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980)). A third party may also bring a common law bad faith action directly against an insurer to recover the amount of an excess judgment. Id. "'The essence of a third-party bad faith cause of action is to remedy a situation in which an insured is exposed to an excess judgment because of the insurer's failure to properly or promptly defend the claim.'" Id. at 458 (citation omitted).

The Florida Supreme Court has repeatedly emphasized that an insurer's duty of good faith to the insured has never been extended to a third party. See id. at

7

455. Rather, a third-party action is based on the damages an insured suffers above his policy limits due to his insurer's bad faith. See id. Once the underlying tort action against the insured is eliminated, "either because the injured party has released the insured from liability or the underlying judgment has been satisfied, the cause of action for third-party bad faith no longer exists." Id. at 458.

In Fidelity and Casualty Co. v. Cope, 462 So. 2d 459 (Fla. 1985), the Florida Supreme Court first held that unless the bad faith action has been assigned to a third party, the third-party's bad faith claim is extinguished when the insured tortfeasor is released from all liability or satisfies the underlying judgment. In that case, James Cope's wife was killed in an automobile collision and Cope received a $100,000 final judgment for the Cope estate. Cope, 462 So. 2d at 459-60. The primary and excess insurers each paid their limits of $10,000 to the estate.[5] Id. at 460. Cope then brought an excess judgment action against the primary insurer alleging bad faith failure to settle. Id. The primary insurer settled this bad faith action for $50,000 in return for Cope's release and satisfaction of judgment in favor of the primary insurer and the insured parties (the driver and owner of the car). Id. Cope did not name the excess insurer in the release and did not intend to

_____

[5]The primary insurer was actually the insurance company for the owner of the car which killed Mrs. Cope, while the excess insurer was the insurance company for the driver of the car. Id. at 460 n.2.

8

release the excess insurer from an excess claim suit.  Id.  Cope then sued the excess

insurer for the remaining $30,000 on the final judgment.  Id.  Because Cope had

released the insured tortfeasor (the driver of the car) and executed a satisfaction of

judgment in favor of the insured, the Florida Supreme Court reasoned that the

insured no longer had a bad faith cause of action against his insurer.  Id. at 461.

Moreover, the insured did not assign his excess claim to Cope.  Id. at 459 n.1.

Accordingly, Cope no longer had a viable bad faith action against the excess

insurer because his right to sue was derivative of the insured's right to sue.  Id. at

461.  The release thus barred a bad faith claim for excess damages, whether

brought by the injured party or the insured.  Id.

　　　The Florida Supreme Court has since clarified that "the key with regard to

whether Cope applies is whether the 'underlying claim' continues to exist after the

settlement agreement."  Rosen v. Florida Ins. Guar. Ass'n, 802 So. 2d 291, 297

(Fla. 2001).  In Rosen, the Florida Supreme Court reiterated that  "the dispositive

question . . . is whether the settlement agreement between [the injured party] and

[the insured] constituted a release of the insured and [insurer] from all further

liability."  Id. at 295.  Because the settlement agreement in Rosen did not release

the underlying claim against the insured and expressly reserved claims against the

9

insurer, the Florida Supreme Court held that Cope did not apply to bar a third-party action against the insurer. Id. at 298.

Similarly, in Macola, the Florida Supreme Court evaluated whether an insurer's tender of its policy limits to the insured before entry of an excess judgment precluded a common law bad faith action against the insurer by the insured and a injured third party. Macola, 953 So. 2d at 458. The Florida Supreme Court noted that, unlike the settlement in Cope which resolved the tort action against the insureds, the insurer's tender did not eliminate the underlying tort action or the insured's exposure to an excess verdict. Id. Consequently, the Florida Supreme Court held that the insured and injured party were not precluded from suing the insurer for bad faith. Id.

The principles in Cope apply to the case of an excess insurer suing a primary insurer for a common law bad faith action. See Auto-Owners Ins. Co. v. American Yachts, Ltd., 492 F. Supp. 2d 1379, 1386 (S.D. Fla. 2007).[6] In Auto-Owners, two primary insurers and an excess insurer settled a boating accident claim whereby the underlying plaintiffs released all insurers from any further liability on claims related to the accident. Id. at 1380. The settlement occurred before the case went

---

[6]As Auto-Owners was decided after the district court entered its order denying National's summary judgment motion, the district court did not have the benefit of a case analyzing Cope in the context of an excess insurer's bad faith claim.

10

to trial so no excess judgment was ever entered. Id. at 1380-81. The excess insurer then sued to recover the amount of excess damages it paid, alleging that the two primary insurers acted in bad faith by rejecting multiple settlement offers within their policy limits. Id. at 1381.

The district court granted summary judgment for the primary insurers on grounds that the excess insurer had no bad faith cause of action where the insured had none. Id. at 1385-86. After reviewing the development of third-party bad faith law, the district court noted that "Florida case law makes it abundantly clear that an excess insurer's bad faith claim against a primary insurer is derivative of the insured's bad faith claim against the primary insurer." Id. at 1385. This is because, in Florida, "an excess insurer may sue a primary insurer for bad faith only under the principle of equitable subrogation." Id. at 1386 n.6. Equitable subrogation effectively substitutes the excess insurer for the insured, allowing an excess insurer to recover "damages resulting from the primary insurer's bad faith failure to settle the claim against their common insured." Id. at 1383. However, the settlement agreement and release by the injured tort plaintiffs in Auto-Owners ensured there was no possibility that the insured would be exposed to an excess judgment. Id. at 1385. "[B]ecause [the insured] was released from all liability, and there is no longer even the potential for his exposure to an excess judgment, [the

11

insured] could not institute a bad faith claim against his primary insurers." Id. "As a result, the excess insurer, who stands in [the insured's] shoes, cannot pursue a claim for bad faith either." Id. at 1385-86.

We affirmed the district court's denial of summary judgment in an unpublished opinion. See Auto-Owners Ins. v. American Yachts Ltd., 271 F. App'x 888 (11th Cir. 2008) (per curiam) (persuasive, non-binding authority). Citing Cope, we held that the excess insurer's suit was barred under Florida law because the insured's bad faith claim against the primary insurers was extinguished by the release agreement. Id. at 889. Because the insured could not be exposed to any loss or damage from an alleged bad faith action against the primary insurers, "'no cause of action for bad faith remain[ed] for anyone." Id. (quoting Cope, 462 So. 2d at 460).

As in Auto-Owners, Cope is controlling here. It is undisputed that the injured parties (the Mejias) released the tortfeasor (Webb) and the common insured (Manheim) from all liability in connection with the automobile collision when it signed a Release and Settlement Agreement in May 2006. That agreement specifically released and forever discharged Manheim (and all its insurers) "from any and all past, present, or future claims of action" related to the underlying tort litigation. R1-41, Exh. 19 at 3. Thus, the 2006 settlement satisfied the underlying

12

judgment in the tort litigation and eliminated any possible exposure of the insured to an excess judgment in the future. The key requirement in Cope, that the underlying claim no longer exists, has been met. See Rosen, 802 So. 2d at 297. Any bad faith claim that Manheim, the insured, may have had against National, the primary insurer, was therefore extinguished by the 2006 release and settlement. See Clement v. Prudential Property & Casualty Ins. Co., 790 F.2d 1545, 1548 (11th Cir. 1986) (applying Cope's rule that "if an injured third party releases the insured from liability, any bad faith claim then retained by the insured arising out of his liability to the injured third party ceases to exist, because the insured is no longer exposed to any excess damages"); Cope, 462 So. 2d at 461. As the excess insurer, Fidelity lost its right to bring a bad faith action against National at the same time as the insured. See Auto-Owners, 271 F. App'x at 889; Auto-Owners, 492 F. Supp. 2d at 1385. Federal's suit against National is consequently barred under Florida law.

Federal principally relies on two cases in support of its lawsuit, neither of which are dispositive here. In North American Van Lines, Inc. v. Lexington Ins. Co., 678 So. 2d 1325, 1333 (Fla. App. 1996), the Fourth District Court of Appeal held that an insured party could bring a bad faith action against its insurers after a settlement between the insured and injured party, even though an excess judgment

was never entered. In the settlement, however, the insured expressly reserved its rights against its insurers to recover the funds it paid to the injured party. North American Van Lines, 678 So. 2d at 1328. Manheim made no such reservation of rights in its settlement with the Mejias. Nor did Manheim assign its rights against its insurers to any third party. Compare Wachovia Ins. Services, Inc. v. Toomey, ___ So. 2d ___, 2008 WL 4379587 at *5 (Fla. Sept. 29, 2008) (Cope does not bar a settlement agreement containing both a simultaneous release of the insured party and an explicit assignment by the insured to the injured parties of causes of action against a third party).

The second case Federal cites, RLI Ins. Co. v. Scottsdale Ins. Co., 691 So. 2d 1095, 1096 (Fla. App. 1997), never addressed whether the settlement between the insured and injured party preserved the rights of the insured, and thereby the excess insurer, to sue the primary insurer for bad faith.[7] The Fourth District did not reach this issue because it concluded the excess insurer could not bring a bad faith suit as a matter of law given there was no evidence of bad faith by the primary insurer. RLI, 691 So. 2d at 1096-97. RLI thus did not consider the key issue presented here and in Auto-Owners, which is whether an injured party's

---

[7]This issue was also never confronted in Colonia Ins. Co. v. Assuranceforeningen Skuld, 588 So. 2d 1009, 1010 (Fla. App. 1991), another case Federal relies upon.

14

settlement of the underlying tort litigation and full release of the insured's liability bars an excess insurer from suing a lower-level insurer for bad faith.

Based on the foregoing, we conclude that no genuine issue of material fact remains and that Federal is precluded as a matter of law from bringing a bad faith action against National.  See Auto-Owners, 492 F. Supp. 2d at 1385-86; Cope, 462 So. 2d at 461.  The district court accordingly erred in denying National's motion for summary judgment.

### III. CONCLUSION

Federal, the excess insurer, brought this lawsuit to recover sums it paid in 2004 to the injured plaintiffs in the underlying tort litigation on grounds that National, the lower-level insurer, acted in bad faith by not accepting earlier offers to settle within National's policy limits.  When National later settled the case in 2006 with the injured parties, it successfully obtained a release of liability for the common insured and all insurers from all present and future claims concerning the tort litigation.  The 2006 release of the insured's liability and satisfaction of the judgment in the underlying tort litigation served to extinguish any claims of bad faith by the insured against its insurers.  Fidelity's rights as an excess insurer were the same as the insured's rights under the theory of equitable subrogation.  As a result, the 2006 release and settlement extinguished Fidelity's right to bring a bad

faith action against National at the same time that it extinguished the insured's right. National is therefore entitled to summary judgment as a matter of law.

REVERSED AND REMANDED for proceedings consistent with this opinion.